L. E. JENSEN et al., Executors, Appellees, v. WILMA NELSON et al., Appellants; AUDUBON COUNTY, Cross-appellant; L. DEE MALLONEE et al., Appellees.

No. 46714.

JULY 27, 1945.

Reynolds, Meyers & Tan Creti, of Carroll, for Wilma Nelson, Nona Grohe, Vera A. Scully, Lester E. Kness, Marvin E. Kness, Arnold Kness, a minor, and Austin E. Kness, Guardian, appellants.

L. Dee Mallonee, of Audubon, and R. G. Howard, of Jefferson, for Alice Schwab, Hope Anderson Truax, Mary Scott, Nellie Kness, Wilson & Harris, and L. Dee Mallonee, appellants.

H. Wayne Black, Charles S. White, and Graham & Graham, all of Audubon, for Audubon County, cross-appellant.

Leonard L. Ryan, of Audubon, for appellees.

GARFIELD, J.— A. R. Anderson, who lived on a farm about three miles from Audubon, died March 4, 1941, leaving no spouse, lineal descendant, parent, brother, or sister. His only heirs were four nieces, three grandnieces, and three grandnephews. The will provides for legacies to them and they are also beneficiaries of the residuary estate. The net estate for distribution is about $52,000 in value. The will, duly probated, was made on February 10, 1937, and contains this provision:

"(F) Seventeen and one-half per cent (17½%) of my estate I hereby give to my executors to hold in trust for the following purpose, to-wit: In the event that the county of Audubon shall construct and build a new court house in the City of Audubon within ten years after my death, then said amount shall by my executors be paid over to the county of Audubon to the proper officers and fund to aid in the construction of said court house. In the event, however, that the said county shall not construct a court house at Audubon within ten years after my death, then in that event said bequest shall lapse and become void and of no effect."

I. The controversy over this provision has arisen because of the fact that Audubon County built a new courthouse in 1939, between the making of the will and testator's death. The heir-legatees, who are also beneficiaries of the residuary estate, contend in effect that Audubon County is not entitled to approximately $9,100 claimed by it because the courthouse was built prematurely and not during the ten-year period commencing with testator's death. Audubon County asserts, however, that since the new courthouse was completed before the expiration of the ten-year period, it is entitled to the bequest. The trial court decided this part of the controversy in favor of Audubon County and the residuary legatees have appealed from this adjudication. We agree with the trial court.

In determining the meaning of Item F, we may properly take into consideration that the trust therein created is for a charitable purpose. Stuart v. City of Easton, 3 Cir., Pa., 74 F. 854, 21 C. C. A. 146, affirmed 170 U. S. 383, 18 S. Ct. 650, 42 L. Ed. 1078; 14 C. J. S. 442, section 13; 10 Am. Jur. 641, section 79; annotation 50 A. L. R. 593, 598. In ascertaining the meaning of a charitable trust, the language used is to be given a broad and liberal construction, favorable to its purpose. Charitable gifts are strongly favored by courts. In re Will of Hagan, 234 Iowa 1001, 1007, 14 N. W. 2d 638, 641, 642, 152 A. L. R. 1296, and authorities cited.

It is well established, even where no charitable bequest is involved, that if any testamentary provision is open to two constructions, one of which would render it void or inoperative, and another which would render it valid, the latter is always to be taken and the former rejected. Porter v. Tracey, 179 Iowa 1295, 1300, 162 N. W. 800; 69 C. J. 88, 89, section 1146; 28 R. C. L. 206, 207, section 167. This rule is particularly applicable where a charitable bequest is drawn in question. An analogous rule is also frequently applied to bequests to charity. If there are two meanings of a word, one of which will effectuate and the other defeat the testator's object, the court will select the former meaning. 10 Am. Jur. 657, 659, section 102. See, also, In re Estate of Nugen, 223 Iowa 428, 440, 272 N. W. 638; Klumpert v. Vrieland, 142 Iowa 434, 437, 121 N. W. 34. We think it apparent that the testator's object was to aid Audubon

County in the construction of a new courthouse. Indeed, Item F in effect so provides.

■ This branch of the case involves the meaning of the words in Item F: ''In the event that the County of Audubon shall construct and build a new court house * * * within ten years after my death * * *.'' The vital question is the meaning of ''within.'' In fixing time, this word is fairly susceptible of different meanings. See 45 Words and Phrases, Perm. Ed., 378-385. It may be taken to fix both the beginning and end of the period of time in which a specified act must be done. In this sense ''within'' means ''during.''

However, ''within'' frequently means ''not beyond, not later than, any time before, before the expiration of.'' In this sense ''within'' fixes the end but not the beginning of the period of time. This meaning is neither unusual nor strained and is well recognized in law. Since this is a charitable bequest, and in view of the rules of construction above mentioned, we are entirely justified in adopting this meaning of ''within'' in construing Item F.

■ Since the courthouse was constructed after the making of the will, even though before testator's death, we think it was constructed within ten years after testator's death, within the meaning of the will. In support of our conclusion, see Hartshorne v. Central Union Trust Co., 103 N. J. Eq. 111, 142 A. 352; Storing v. Stutsman, 56 N. D. 531, 218 N. W. 223, 226, 227; Davies v. Miller, 130 U. S. 284, 9 S. Ct. 560, 32 L. Ed. 932; French v. Powell, 135 Cal. 636, 68 P. 92, 94; Carey-Lombard Lbr. Co. v. Fullenwider, 150 Ill. 629, 37 N. E. 899, 900.

Hartshorne v. Central Union Trust Co., supra, is closely in point. There the will provided that payment of a bequest was to be accelerated if the beneficiary performed a certain act ''within three months after my death.'' Even though the bequest was not a charitable one, the court held that performance of the act after the will was made, before the testator died, was a compliance with the condition of the will.

We have carefully considered In re Estate of White, 130 Kan. 714, 288 P. 764, upon which the residuary legatees place strong reliance. There a legacy to the Salvation Army to assist

in erecting a building was held to have failed because the building was constructed before testatrix died. However, the important provision of the White will made *commencement* of actual building operations within two years after testatrix' decease a condition to the validity of the legacy. There is nothing in the Anderson will that requires construction of the courthouse to be commenced after his death.

Some significance may properly be attached to the fact that in all probability Anderson had full knowledge of the erection of the courthouse and made no change in the terms of his will. Levings v. Wood, 339 Ill. 11, 170 N. E. 767, 770, and cases cited.

Since we have rejected the contention of the heir-legatees and upheld the gift to Audubon County under Item F, it is of no consequence whether, by accepting payment of their legacies, the heir-legatees estopped themselves from questioning the gift to the county, as it alleged in its third amendment to answer.

II. Paragraph 4 of the will reads:

"Should any of the beneficiaries named in this will file any objections to the probate of this will, or bring any action to set aside the probate thereof, or aid in making any objections to the probate thereof or aid in bringing any action to set said will aside, I direct that in that event the share or shares herein given to said beneficiary or beneficiaries shall lapse and that such lapsed legacy shall be added in equal proportions to the bequests provided for in items 'F' and 'G' herein."

Audubon County has appealed from the failure of the trial court to hold that the heir-legatees forfeited their legacies (and that a portion thereof be added to the bequest in Item F), because of paragraph 4 of the will, as a result of disputing the right of the county to its bequest under Item F. This contention was not raised in the lower court by any pleading nor in any other way, so far as the record shows. (We have not overlooked Audubon County's third amendment to answer.) We would, of course, for this reason be justified in not considering this contention.

Notwithstanding what we have just said, we have carefully considered the appeal of Audubon County and find it is without

merit. The heir-legatees did not "file any objections to the probate of this will, or bring any action to set aside the probate thereof, or aid in making any objections to the probate thereof or aid in bringing any action to set said will aside," within the meaning of paragraph 4.

This suit was brought by the executors to obtain a construction of portions of the will, pursuant to an order of the probate court. Presumably both the executors and the probate court were uncertain that Audubon County was entitled to its bequest under Item F. The heirs were made defendants to the suit. They merely asserted that, under what they contended was a proper construction of Item F, the bequest was not payable to the county and should be added to the residuary estate of which they were beneficiaries. The heirs' contention as against Audubon County involved merely a dispute over the meaning of a single provision of the will. There is no basis for invoking paragraph 4 of the will against the heirs. South Norwalk Trust Co. v. St. John, 92 Conn. 168, 101 A. 961, Ann. Cas. 1918E, 1090, 1093; 69 C. J. 687, 688, section 1808, n89; annotation 5 A. L. R. 1370, 1372, 1373.

Further, even though what the heirs have done in this case could be considered such a contest of the will as to invoke the provisions of paragraph 4, a majority of the court would hold that their legacies were not thereby forfeited, provided they acted in good faith and with probable cause. See In re Estate of Cocklin, 236 Iowa 98, 112, 17 N. W. 2d 129, 135; annotation 125 A. L. R. 1135, 1136. There is no claim the heirs did not so act.

■ III. The will also contains these provisions:

"3. The balance of my estate is to be divided and distributed in the following manner and proportions, to wit:

"(A) To Wilma Kness, Nona Kness, Vera Kness, Arnold Kness, Marvin Kness and Lester Kness, children of Brick Kness of Audubon, Iowa, I give and bequeath twenty-five per cent of my estate, to be divided among said children equally, share and share alike.

"(B) To Alice Schwab, Hope Anderson, Mary Scott, Nellie Kness, children of D. B. Anderson, I give and bequeath fifteen

per cent of my estate, to be divided equally among said children, share and share alike.

"(C) To my brother, D. B. Anderson, I give and bequeath ten per cent of my estate, to be his absolute property. * * *

"5. All the rest and residue of my estate, including lapsed legacies and gifts which fall into the residuum of my estate, I hereby give and devise to the persons named in items 'A' and 'B' of paragraph 3 hereof, to wit: Wilma Kness, Nona Kness, Vera Kness, Arnold Kness, Lester Kness, Alice Schwab, Marvin Kness, Hope Anderson, Mary Scott and Nellie Kness, in equal shares, share and share alike."

The remaining controversy in the case has arisen because the brother, D. B. Anderson, named in Item C, died before the testator, after the will was made. Wilma Kness (now Wilma Nelson) and the five other legatees named in A are daughters and sons of a deceased daughter of D. B. Anderson. (They are testator's grandnieces and grandnephews, heretofore mentioned.) Alice Schwab and the three other legatees named in B are surviving daughters of D. B. Anderson. (They are testator's nieces, heretofore mentioned.) These legatees named in A and B, who are all living, are the sole heirs of both testator and D. B. Anderson.

The surviving daughters of D. B. Anderson contend that they, together with their nieces and nephews named in Item A, inherited the property bequeathed under Item C because of section 11861, Code, 1939, which reads:

"If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will a contrary intent is manifest."

Wilma Kness (Nelson) and the five other legatees named in Item A contend, however, that section 11861 does not apply because "a contrary intent is manifest from the will" and that the property bequeathed to D. B. Anderson under Item C became part of the residuary estate to be disposed of under paragraph 5. The trial court so held. Alice Schwab and her three sisters have appealed from this adjudication.

The term "lapsed legacy" is generally applied to a legacy

which has become inoperative because of the death, in the lifetime of the testator, of the person named as legatee. 69 C. J. 1051, section 2255; 4 Page on Wills, Lifetime Ed., 162, section 1414; 24 Words and Phrases, Perm. Ed., 194, 195. It is of no consequence here that the term ''lapsed legacy'' is occasionally used to apply to a gift by will that fails for some reason other than the death of the donee in the testator's lifetime. Unquestionably, unless section 11861 is applicable here, the legacy to the brother, D. B. Anderson, lapsed. Gilbert v. Gilbert, 127 Iowa 568, 570, 571, 103 N. W. 789.

In the absence of statute, a lapsed legacy passes to the residuary legatees if there are such; if not, to the testator's heirs as intestate property. In re Estate of Freeman, 146 Iowa 38, 44, 124 N. W. 804; Gilbert v. Gilbert, supra; 28 R. C. L. 340, 341, section 334. However, most states have statutes somewhat similar to our section 11861. For an analysis of the various statutes, see Bordwell's ''The Statute Law of Wills,'' 14 Iowa L. Rev. 428. The purpose of our statute is to preserve the bequest for the benefit of persons who would presumably have enjoyed its benefits had the legatee survived the testator and died immediately afterward. In re Estate of Mikkelsen, 202 Iowa 842, 844, 211 N. W. 254, and cases cited.

We agree with the trial court that it is manifest from the terms of the Anderson will that testator did not intend the heirs of D. B. Anderson to inherit the gift to him under section 11861. It is, of course, a familiar rule that in determining a testator's intent the will should be considered as a whole and effect given to each and every provision, if this can be done. In re Estate of Freeman, supra; Carman v. Davis, 193 Iowa 1076, 1078, 188 N. W. 892; 69 C. J. 104, 108, section 1153; 28 R. C. L. 215, 217, sections 175, 176.

Paragraph 1 of the will directs the executors to convert all property into cash. Paragraph 2 directs the payment of debts and expenses. Subject to paragraph 2, the estate is to be distributed as provided by Items A to G of paragraph 3. Item A is a bequest of twenty-five per cent of the estate to the six grandchildren of D. B. Anderson, ''to be divided among said children equally, share and share alike.'' Item B is a bequest of fifteen

per cent of the estate to the four daughters of D. B. Anderson, "to be divided equally among said children, share and share alike." It is apparent that testator's intent as expressed in these provisions is that each of the six legatees named in A receive four and one-sixth per cent of the estate, while each of the four legatees named in B receive three and three-fourths per cent of the estate. Thus the gifts to the legatees named in A and B are of substantially equal shares. But each legatee named in A receives a slightly larger share than each legatee named in B.

Under paragraph 5, the residuary clause, the ten legatees named in A and B share the residuary estate equally, per capita. Under the trial court's decree each receives one tenth of the share that would have gone to D. B. Anderson had he survived. This is entirely consistent with the intent of the testator as expressed in Items A and B that these ten heirs acquire substantially equal shares in his estate. Further, we have the clearly expressed intent of the testator in paragraph 5 that these ten heirs should acquire the residuary estate, *including lapsed legacies*, in equal shares. Similar language has been held a sufficient expression of intent that a "nonlapse" statute should not apply. In re Neydorff, 193 App. Div. 531, 184 N. Y. Supp. 551. As stated, the gift to D. B. Anderson is a lapsed legacy.

If the legacy to D. B. Anderson were to descend to his heirs, under section 11861, Alice Schwab and her three sisters would receive four fifths thereof, while the six grandchildren named in A would receive, among them, only the remaining one fifth. We think the will clearly negatives any intent that any part of the estate descend so that each grandchild receive only one sixth of what each child receives. Under either contention, the same individuals acquire the share that would have gone to their common ancestor had he survived. It seems to us testator intended that this share should be divided equally rather than per stirpes under section 11861. There is no provision in the will indicating that testator had any other intent than we have attributed to him.

The fact that children of a deceased legatee are given legacies is in itself sometimes held to exclude the possibility that testator intended them to take their parent's share under

such a statute as 11861, in the event the parent predeceases the testator. Annotation 92 A. L. R. 846, 854. There seems to be adequate basis for such conclusion where, as here, there are legacies to all the heirs of the deceased legatee and such legacies are of different shares than would be acquired under the statute.

It is frequently said that precedents are not of great value in cases of this kind. Luitjens v. Larson, 222 Iowa 1320, 1321, 271 N. W. 239; In re Estate of Hellman, 221 Iowa 552, 555, 266 N. W. 36; 69 C. J. 80, section 1136; 28 R. C. L. 205, 206, section 166. Nevertheless, we think our decisions involving section 11861 tend to support the conclusion here reached.

In re Estate of Phelps, 147 Iowa 323, 326, 126 N. W. 328, 329, construes a will which contained bequests to testator's brother and the brother's two daughters. The residue, "together with any of my estate that may fail, for any reason to pass under * * * this my will," was to go, one half to one of said nieces, one fourth to the other niece, and one fourth to certain nephews. The brother predeceased testator. The niece who was beneficiary of one fourth the residuary estate contended she inherited, under what is now section 11861, half the gift that would have gone to her father had he survived. The contention was rejected and it was held the gift to the deceased brother passed under the residuary clause. This from the opinion is applicable here:

"He gave to the residuary legatees all parts of his estate which for any reason did not go directly to the person named in the will. He intended the bequest to his brother Thomas as a personal one, and undertook to fully provide for the appellant and her sister by the specific devises to them and their husbands and by the residuary clause. The statute itself says that it shall not be effective where by the terms of the will a contrary intent is manifest, and the residuary clause of the will says that, if any part of the estate shall fail to pass in accordance with the terms and conditions of the will, such part shall pass under said residuary clause. It is idle to say that wills could not be made but for the law, and that the statute in question became a part of the will. As we have already said.

the aid of the statute can not be, and never is, invoked where the intent of the will is manifest. The statute clearly can not be ingrafted upon a will for the purpose of making uncertain the meaning of language that would otherwise be certain. The will shows clearly that the testator intended to have his estate go to certain persons, and that he carefully provided for substitution where it might become necessary, and this without reference to or regard for the statute in question."

See, also, Gilbert v. Gilbert, supra, 127 Iowa 568, 103 N. W. 789; In re Estate of Freeman, supra, 146 Iowa 38, 124 N. W. 804; In re Estate of Best, 206 Iowa 786, 221 N. W. 369; Tennant v. Smith, 173 Iowa 264, 155 N. W. 267; Herring v. Herring, 187 Iowa 593, 596, 174 N. W. 364; In re Estate of Warren, 211 Iowa 940, 234 N. W. 835; annotation 92 A. L. R. 846.

Upon all appeals, the case is affirmed. One fourth the costs of this appeal are taxed to Audubon County. Twenty-five dollars of the remaining costs are taxed to Alice Schwab and her three sisters; the balance to the ten heir-legatees.—Affirmed.

MILLER, C. J., and BLISS, OLIVER, HALE, SMITH, and MULRONEY, JJ., concur.

MANTZ, J., takes no part.