[Civ. No. 19910.    First Dist., Div. One.    Dec. 26, 1961.]

Estate of MAMYE FRIEDMAN, Deceased. GUSSYE SCHAPIRO et al., Claimants and Appellants, v. CLARE SOLOMON, Claimant and Respondent.

Suzie S. Thorn for Claimants and Appellants.

Field, DeGoff, Rieman & Murphy for Claimant and Respondent.

TOBRINER, J.—We set forth hereinafter why we have concluded that the probate court correctly applied section 92 of the Probate Code (the antilapse statute) to the legacy involved in this case. The will provided for a $1,500 legacy to the daughter of the testatrix. Since the daughter predeceased the testatrix, the court properly ruled that the legacy went to the daughter's lineal descendant, the granddaughter of the testatrix, even though, as to certain other property, the will specifically provided that the same granddaughter would be substituted for her mother in case of her death.

The disputed section of the will provided for a gift of the testatrix, Mamye Friedman, to her daughter, Rosalie Lewis, reading "Fifteen Hundred ($1,500.00) Dollars in cash to my daughter, Rosalie Lewis." The next article contained a further bequest: "Five Hundred ($500.00) Dollars to my son-in-law, Esmond Schapiro, in appreciation for all of the legal

services he has rendered to me during the past twenty-five years." Article IV provided that the testatrix gave "all the rest" of her property to named trustees "to pay the net income therefrom . . . unto my . . . daughter, Rosalie Lewis, during her lifetime or until she should marry."

The will then provided: "When my said daughter dies or marries . . . said trust shall . . . terminate and the property remaining in the trust shall go as follows: All my interest in the Estate of Mrs. C. Friedman in Louisiana shall go in equal shares to my sons, Sylvan and Harry Friedman . . . and all the other trust property shall go as follows: One Hundred ($100.00) Dollars shall go to each of my grandchildren and each of my great grandchildren then living, and the entire balance shall go in equal shares to my children, Gussye Schapiro, Al Gilbert, Marcus Goldberg and Rosalie Lewis, or if she is then deceased, her share to her daughter, Clare Solomon, or if she is also then deceased, to Clare Solomon's issue, per stirpes."

The testatrix executed her will on April 28, 1952; her daughter, Rosalie Lewis, predeceased her on February 8, 1959, leaving the one child, Clare Solomon, testatrix' granddaughter, the respondent in this contest. On November 12, 1959, the testatrix died without having altered her will. Gussye Schapiro, Albert J. Gilbert, Marcus H. Goldberg and Rosalie Lewis were testatrix' children by her first marriage; Sylvan Friedman and Harry Friedman were her children by a second marriage. All of the children except Rosalie Lewis survived her. The testatrix also left surviving her six grandchildren and five great-grandchildren.

The court ordered that under section 92 of the Probate Code the $1,500 bequeathed to Rosalie Lewis be distributed to Clare Solomon, her only child; the other three remaindermen, Gussye Schapiro, Albert J. Gilbert, and Marcus H. Goldberg appeal from this determination.

Probate Code section 92 provides: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute another in his place; except that when any estate is devised or bequeathed to any kindred of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, . . . such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he survived the testator."

"The anti-lapse statutes" as Witkin points out, "are based on the presumed desire of the testator to have gifts intended for certain persons go to their children or other descendants in lieu of disposition as lapsed gifts. Prob. C. 92 provides that where the devisee or legatee is 'kindred of the testator,' and such devisee or legatee leaves 'lineal descendants,' the *descendants take* in the same manner as the devisee or legatee would have done had he survived the testator." (4 Witkin, Summary of Cal. Law, § 155, p. 3146.) ▮ Thus as to a disposition to a kindred of the testator who dies before the testator leaving lineal descendants, the section enacts an exception to the general rule that if a legatee under a will predeceases a testator and the will is silent regarding such a contingency, the gift falls into the residuary estate if there is one (*Estate of Kelleher* (1928) 205 Cal. 757 [272 P. 1060]) or, if there is none, the testator "is deemed to have died intestate as to that portion of the estate. . . ." (*Estate of Dunn* (1953) 120 Cal.App.2d 294, 295 [260 P.2d 964].)

▮▮ Application of the antilapse statute is not inexorable. As Justice Bray stated in *Estate of Carroll* (1956) 138 Cal. App.2d 363 [291 P.2d 976], "While that portion of the section dealing with legatees predeceasing the testator and leaving lineal descendants says nothing about the testator's intention it is universally held that antilapse statutes are not automatically applied, but the testator's intention must, if possible, be ascertained." (P. 365.) Quoting Page on Wills, volume 4, section 1423, page 181, the court points out that the testator's intention is to be " 'shown with a reasonable degree of certainty. . . .' " (P. 365.)

Appellants contend in the instant case that the will clearly shows such an intention to provide for the deceased daughter, Rosalie Lewis, for life; that at her death the testatrix intended that the remaining property be divided equally between the children of testatrix' first marriage. We must decide whether or not the face of the will shows with a reasonable degree of certainty that the testatrix did not intend the antilapse section to apply. To support this proposition appellants submit five points, each of which we separately examine, and which, as we shall point out, we find insubstantial.

▮ 1. *The contention that the pattern of the will disclosed that the testatrix primarily intended "to take care of her widowed daughter, Rosalie Lewis, during her lifetime, and then to have the bulk of her California estate divided equally among the four children of her first marriage."*

We do not believe that the testatrix designed the will to bestow ''the bulk'' of her California estate equally among the four children of her first marriage. According to the decree of final distribution the net estate afforded $3,516.22 available for distribution. Since the will provided for one gift of $1,500 to Rosalie Lewis and another of $500 to Esmond Schapiro, the outright gifts equaled $2,000 of an estate of some $3,500. The bulk of the estate clearly flowed to the legatees.

Nor does the testatrix manifest an intent that even the remaining approximate $1,500 be divided equally among the four children of the first marriage. After Rosalie's death the property in the trust, excluding the Louisiana property which does not compose any part of the California estate, is to be divided among ''my grandchildren and each of my great grandchildren then living, and the entire balance shall go in equal shares to my children, Gussye Schapiro, Al Gilbert, Marcus Goldberg and Rosalie Lewis. . . .'' Since 11 grandchildren and great-grandchildren survived the testatrix this provision called for a total amount of $1,100. When this figure is subtracted from the remaining approximate $1,500, we obtain a balance of roughly $400 to be distributed to the four children of the first marriage with the exception that in the event of the decease of one of the children, Rosalie Lewis, her daughter, Clare Solomon, would take in her stead. The approximate sum of $400, which apparently constitutes the subject matter of this controversy, certainly does not constitute the ''bulk'' of decedent's California estate.

2. *The contention that when the testatrix ''intended a gift over to another, in case the legatee or beneficiary predeceased her,'' she so provided in explicit language.*

Appellants contend that the specific disposition in one instance of the ''gift over'' of the share of a predeceased legatee shows that the silence of testatrix in another provision as to a ''gift over,'' in such instance, precludes a substitution. The disposition to which appellants allude, however, relates to an entirely different time in the sequence of the distribution of the estate. The provision for substitution occurs if at the time of the termination of the testamentary trust Rosalie is not living. Since the trust terminated on her death or marriage, the testatrix would naturally expect such termination to occur *after* testatrix' own death. ''When my . . . daughter dies or marries . . . said trust . . . terminate[s]'' and Rosalie's share ''if she is *then* deceased'' goes to respondent, Clare Solomon. (Emphasis added.) This provision does not relate to a sub-

stitution in the event that a legatee were to die *before* the testatrix. Nothing in the will so much as suggests that the testatrix thought of that possibility or intended in such a circumstance to forbid a substitution.

Appellants argue that since "in one provision for Rosalie Lewis the testator [*sic*] specifically provided for a gift over to Clare Solomon in the event Rosalie predeceased her and in another bequest *to the very same person* was significantly silent in regard to any gift over" the testatrix intended the latter gift to lapse. As we have pointed out, however, the testatrix' mind was directed to different situations in each of these dispositions. When the testatrix disposed of the property which remained in trust after Rosalie's death or marriage she contemplated a situation in which Rosalie should marry or die after the testatrix' own death and after the creation of the trust. She obviously did not then visualize the contingency that Rosalie should predecease her. Consequently, the provision as to the taking of Rosalie's share by her daughter upon the termination of the trust affords no scintilla of indication of the testatrix' intent as to the disposition of the bequest in the event Rosalie predeceased her.

In support of this contention appellants cite *In re Phelps' Estate* (1910) 147 Iowa 323 [126 N.W. 328], but that case may be distinguished on two grounds. First, the will in that case specifically provided for substitutionary gifts to prevent failure of certain bequests in case the legatees predeceased testator, but made no such provision in the case of other bequests. As we stated *supra,* the testatrix in the instant case did not provide for *any* substitutionary gifts to prevent the failure of bequests. Second, the residuary clause in the will in *Phelps* specifically referred to " 'any of my estate that may fail, for any reason to pass under the foregoing terms and conditions of this my will. . . .' " (P. 329 [126 N.W.].) This provision demonstrates that the testator contemplated that contingency. Appellants make no such showing in the present case.

3. *The contention that testatrix provided for equal distribution to kindred of equal relationship; that if the anti-lapse statute applies, Clare Solomon will receive "49 per cent of the . . . entire California estate, whereas . . . [testatrix'] children will receive approximately $104.00 each . . ."; that appellants' contention would, on the contrary, provide Clare Solomon about 17 per cent and the children about 14 per cent.*

440

The alleged equal distribution to kindred of equal relationship does not accord with the special bequest to the daughter, Rosalie, which in itself creates an imbalance of gifts among the siblings. We doubt that a claim for a sought mathematical equality, in view of its impossibility under this will, could defeat the applicability of section 92 of the Probate Code. The described inequality which results from the decree of distribution is the creature of testatrix' own intent.

■ 4. *The contention that "Clare Solomon is given a $100.00 gift in her own right, as a grand child of the . . . [testatrix]" and this in itself is " 'sometimes held to exclude the possibility that testator intended them to take their parent's share' " under the antilapse statute.*

The fact that the will specifically provides that respondent should take the gift of $100 that would otherwise have gone to her mother is no indication that the testatrix did not intend that respondent under the antilapse statute should take the $1,500 gift that would otherwise have gone to her mother. The former result is not incompatible with the latter. Indeed, as *Estate of Carroll, supra,* 138 Cal.App.2d 363 shows, even an express disinheritance does not defeat the application of the antilapse statute to the disinherited lineal descendant. How can the *legacy* work a greater disadvantage to that descendant than the disinheritance? If the disinheritance does not show the testatrix' intent that the antilapse statute not apply, surely a gift does not do so.

We do not believe appellants can successfully rely upon *Jensen* v. *Nelson* (1945) 236 Iowa 569 [19 N.W.2d 596], for the proposition that the "fact that children of a deceased legatee are given legacies is in itself sometimes held to exclude the possibility that testator intended them to take their parents' share under . . . [an anti-lapse statute] in the event the parent predeceases the testator." (P. 601 [19 N.W.2d].) The decision in the Iowa case involved the construction of a will which differs from the instant one. The quoted statement apparently rests upon an annotation in 92 American Law Reports 846, 854 which, in turn, relies upon four cases that involve facts materially different than those before us. In one of the cited cases (*McGrath's Exrs.* v. *Brodbelt* (Ky. 1910) 128 S.W. 883), the court did not find an implied contrary intention on the part of the testator; two of the cases (*Brewer* v. *Curtis* (1920) 7 Boyce (30 Del.) 503 [108 A. 673]; *In re Phelps, supra,* 147 Iowa 323 [126 N.W. 328]) involved situations in which the testator recognized the possibility of a

lapse, and the fourth case (*Eckerle* v. *Hilerich's Exr.* (1888) 9 Ky.L.Rep. 723), involved a distribution entirely dissimilar to that presented in this case. Indeed, the annotators of American Law Reports have supplemented 92 American Law Reports with 63 American Law Reports 2d 1172; in the latter annotation they state that "Even where those entitled to take under the operation of the statute were otherwise provided for in the will . . . the statute, in most cases, has been held to apply." (P. 1176.)

5. *The contention that Rosalie Lewis predeceased the testatrix by some nine months but the testatrix did not change her will; that she realized the gift would lapse and "had provided for a substitute in the residuary clause, which is the one place that she wanted one."*

The very purpose of the antilapse statute is to provide a substitutionary legatee in the case in which the testator does not express an intention on the matter. If the testator's failure to act will in itself defeat the operation of the statute, it will never apply. The statute rests upon the premise that the silence of the testator must dissolve in his presumed desire that the lineal descendant take in the place of the deceased legatee. Appellants cannot use the nonaction of the testatrix to avoid the very statute which is designed to function in that special circumstance.

Since we have held that the antilapse statute applies, we do not discuss appellants' further argument that no intestacy results upon a lapse because the bequest passes under the residuary clause.

We conclude that the intent of a testator to defeat the application of an antilapse statute cannot be gleaned from isolated pieces of the will; the design must be clear and the intent reasonably certain. We cannot find such an intent here.

We affirm the decree.

Bray, P. J., and Sullivan, J., concurred.