[Civ. No. 41483. First Dist., Div. Two. Jan. 9, 1978.]

Estate of JOSEPHINE A. SALISBURY, Deceased.
MARY REARDON et al., Claimants and Respondents, v.
RAYMOND J. LOVELL et al., Claimants and Appellants.

636

**COUNSEL**

Sheldon L. Foreman and Nancy Morse Knight for Claimants and Appellants.

Ferguson & Berland and Michael C. Ferguson for Claimants and Respondents.

## OPINION

**ROUSE, J.**—This appeal presents but one issue for decision: whether the testatrix' will contains a sufficiently clear expression of her intent to render inapplicable the California antilapse statute.

The decedent, Josephine Salisbury, died on November 22, 1973, leaving a formal will which contained only two dispositive provisions. In clause 4, the testatrix devised certain real property to her brother, Louis Kehoe. In clause 5, she devised and bequeathed "the residue of my estate, real and personal, wheresoever situate, *including all failed and lapsed gifts,* to my granddaughter and grandson . . . BARBARA M. LOVELL . . . [and] RAYMOND J. LOVELL. . . ." (Italics supplied.)

The testatrix' brother, Louis Kehoe, died on January 24, 1968, predeceasing the testatrix. He was survived by two daughters, Louise Russell and Mary Reardon.

On December 23, 1975, in its capacity as the personal representative of the decedent's estate, Central Bank filed a petition to determine heirship in regard to the real property which had been devised to Louis Kehoe. Statements of interest and supporting points and authorities were filed by the testatrix' two grandchildren and by the two daughters of Louis Kehoe.

On May 27, 1976, the court rendered its order determining heirship and held that, by virtue of section 92 of the Probate Code (the California antilapse statute), the two daughters of Louis Kehoe were entitled to take the real property which had been devised to their late father. The testatrix' two grandchildren have appealed from that order.

Section 92 of the Probate Code provides that "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute another in his place; except that when any estate is devised or bequeathed to any kindred of the testator, and the devisee or legatee dies before the testator, having lineal descendants, or is dead at the time the will is executed, but leaves lineal descendants surviving the testator, such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he survived the testator."

■ It is well settled that the California antilapse statute will not be applied where the testator has expressed, with sufficient clarity, a contrary intention. As pointed out in *Estate of Carroll* (1956) 138 Cal.App.2d 363, 365 [291 P.2d 976], "While that portion of the section dealing with legatees predeceasing the testator and leaving lineal descendants says nothing about the testator's intention it is universally held that antilapse statutes are not automatically applied, but the testator's intention must, if possible, be ascertained." Since a testator is presumed to know the law at the time of making the will, section 92 of the Probate Code must be read into the will unless a contrary intent appears. (*Estate of Roberts* (1970) 9 Cal.App.3d 747, 751-752 [88 Cal.Rptr. 396].) The paramount question is whether such intent is plainly indicated (*Estate of Steidl* (1948) 89 Cal.App.2d 488, 490 [201 P.2d 58]) or is shown with a reasonable degree of certainty. (*Estate of Friedman* (1961) 198 Cal.App.2d 434, 437 [18 Cal.Rptr. 252].)

■ Appellants are the testatrix' two grandchildren and her residual beneficiaries. They contend that the testatrix did express, with sufficient clarity, her intent that the California antilapse statute not apply to the devise of real property to her brother. They point out that the testatrix' will contained only two dispositive provisions: clause 4, which devised the real property to the testatrix' brother, and clause 5, which left the entire residue of the testatrix' real and personal property, "including all failed and lapsed gifts," to appellants. They argue that, since the devise of real property to the testatrix' brother constituted the only other gift which she made, the language in clause 5 could only have reference to that devise, thus the testatrix clearly expressed her intent that the antilapse statute not apply to that gift; that the testatrix manifested an intent that the real property in question go to appellants in the event that the testatrix' brother predeceased her.

Appellants' reasoning is persuasive. Although there appears to be no California case where the provisions of the will are similar to those which are before us, appellants have cited three decisions from other jurisdictions which support their position. In *In re Phelps' Estate* (1910) 147 Iowa 323 [126 N.W. 328], the testator had bequeathed $25,000 to a brother who predeceased him, but was survived by two daughters. The appellant, one of the daughters, claimed that one-half of the bequest left to her father passed to her under the Iowa antilapse statute. The Iowa Supreme Court rejected her claim, holding that the testator had expressed a clear intent that the antilapse statute not apply to this bequest. The court based its holding upon the following provisions in the will: (1) although

bequests to various beneficiaries provided that, if the beneficiaries predeceased the testator, the sums bequeathed them should go to their heirs, the bequest to the appellant's father contained no such provision; and (2) the will contained a residuary clause which bequeathed and devised all of the testator's remaining property, including "any of my estate that may fail, for any reason, to pass under the foregoing terms and conditions of this my will . . . ." (P. 329.) With reference to the latter provision, the court stated, "the residuary clause of the will says that, if any part of the estate shall fail to pass in accordance with the terms and conditions of the will, such part shall pass under said residuary clause. It is idle to say that wills could not be made but for the law, and that the [antilapse] statute in question became a part of the will. As we have already said, the aid of the statute cannot be, and never is, invoked where the intent of the will is manifest. The statute clearly cannot be ingrafted upon a will for the purpose of making uncertain the meaning of language that would otherwise be certain. The will shows clearly that the testator intended to have his estate go to certain persons, and that he carefully provided for substitution where it might become necessary, and this without reference to or regard for the statute in question." (P. 330.)

The second case upon which appellants rely is *In re Neydorff* (1920) 193 App.Div. 531 [184 N.Y.S. 551]. There the appellate division of the New York Supreme Court based its decision solely upon a provision in the residuary clause which was similar to the clause in the *Phelps* case and to that which is before us in this case. In *Neydorff*, the testator bequeathed $1,000 to each of his brothers and sisters, to his daughter and to his two grandsons. He then left the remainder of all his real and personal property, "including lapsed legacies," to his niece. (P. 553.) A brother and sister of the testator predeceased him, and it was contended that their $1,000 bequests went to their descendants under the New York antilapse statute. The court rejected this argument and held that the reference to "lapsed legacies" in the residuary clause amounted to a declaration by the testator that, in the event any of his brothers or sisters predeceased him, their bequests would go to his niece.

Finally, in *Jensen* v. *Nelson* (1945) 236 Iowa 569 [19 N.W.2d 596], the testator's only heirs were various nieces, grandnieces and grandnephews, all of whom received legacies under his will and were also beneficiaries of the residuary clause. The residuary clause specified that the residuary estate was to include "lapsed legacies." The testator had left a legacy to a brother who predeceased him, and it was contended that the Iowa antilapse statute applied and that the brother's share went to his lineal

descendants. In rejecting this contention, the Iowa Supreme Court cited both the *Neydorff* and *Phelps* cases with approval and held that the reference to "lapsed legacies" in the residuary clause was a clear expression of his intent that the antilapse statute not apply; that, in the event that his brother predeceased him, the brother's legacy would go to the beneficiaries named in the residuary clause in the proportions therein specified.

The interpretation accorded by these cases to residuary clauses which refer to failed or lapsed gifts appears to us to be eminently sound and clearly applicable in the instant case, particularly since the testatrix must have intended such language to refer to the devise to her brother, which was the only other gift which she made in her will.

Respondents take the contrary position and raise several arguments in support thereof. However, we find that these arguments are not persuasive. Respondents suggest that in *Estate of Friedman, supra,* 198 Cal.App.2d 434, and in *Estate of Tibbetts* (1941) 48 Cal.App.2d 177 [119 P.2d 368], the California courts have made it clear that foreign cases are irrelevant in deciding questions raised under the California antilapse statute, since the rights of inheritance in testamentary dispositions are wholly statutory and subject to legislative control. A reading of those two cases fails to furnish any support for this proposition. The will under construction in *Estate of Friedman* was totally dissimilar from the will involved in this case. It contained no reference to failed or lapsed gifts nor did it evidence any other clear indication of the testatrix' intent that the antilapse statute not apply. The appellate court did not hold that foreign cases were irrelevant in ascertaining the testatrix' intent, but held only that *Jensen* v. *Nelson, supra,* 19 N.W.2d 596, and *In re Phelps' Estate, supra,* 126 N.W. 328, were readily distinguishable on their facts. (Pp. 439, 440.) In its discussion of the *Phelps* case, the *Friedman* court noted that the residuary clause in the will in *Phelps* specifically referred to "any of my estate that may fail, for any reason to pass under the foregoing terms and conditions of this my will." The *Friedman* court stated: *"This provision demonstrates that the testator contemplated that contingency. Appellants make no such showing in the present case."* (P. 439; italics added.) The emphasized language of the *Friedman* case strongly suggests that the court agreed with the *Phelps* reasoning and would have decided the case which was before it in accordance with *Phelps* had the will in question contained language similar to the language in the *Phelps* will.

*Estate of Tibbetts, supra,* 48 Cal.App.2d 177, furnishes no better support for respondents' claim that foreign cases are irrelevant. In *Tibbetts,* the court held that, where the testatrix was a resident of California and made her will here disposing of property situated in California, the antilapse statute of this state applied and the terms of a Massachusetts antilapse statute, which differed substantially from the California statute, were irrelevant. (P. 179.)

■ Where there is no California case directly in point, foreign decisions involving similar statutes and similar factual situations will always be of great value to the California courts. Contrary to the position taken by respondents, neither the *Friedman* case nor the *Tibbetts* case furnish authority for any different proposition.

Respondents also rely upon such cases as *Estate of Roberts, supra,* 9 Cal.App.3d 747, and *Estate of Carroll, supra,* 138 Cal.App.2d 363, where the courts have held that the fact that the testator left a very nominal sum, such as $1, to a particular beneficiary, did not evidence any clear expression of testamentary intent that the antilapse statute not operate in favor of such beneficiary. Each of these cases is distinguishable in that there was nothing in the testator's will to indicate his intent to substitute another beneficiary in the event that a particular named beneficiary predeceased the testator. Here, the testatrix' reference to failed and lapsed gifts in the residuary clause can only be interpreted as indicating her intent to substitute the residuary beneficiaries in place of her brother should he predecease her.

■ Respondents rely upon section 104 of the Probate Code, which provides that "A clear and distinct devise or bequest cannot be affected by any reasons assigned therefor, or by any other words not equally clear and distinct, or by inference or argument from other parts of the will, or by an inaccurate recital of or reference to its contents in another part of the will."

It is difficult to understand how this code section aids respondents. The devise to the testatrix' brother contains no clear or distinct statement that his lineal descendants should take title to the real property in his place, should he predecease the testatrix. The devise says nothing whatever about that contingency. On the other hand, the residuary clause contains a clear expression of the testatrix' intent that her residuary beneficiaries should take the real property devised to her brother in the event he predeceased her.

Respondents suggest that the reference to failed and lapsed gifts in the residuary clause should be reasonably interpreted as providing for a gift over to appellants, the residual beneficiaries, only in the event that the testatrix' brother *and all of his issue* predeceased the testatrix. (Italics by respondents and court.) This argument presupposes that the antilapse statute should apply even though the testatrix clearly expressed her contrary intent in the residuary clause. Such is not the law. ■ Further, this argument would appear to constitute an attempt to interpret the phrase "lapsed and failed gifts" in an extremely technical manner. Although section 106 of the Probate Code does provide, in pertinent part, that "technical words in a will are to be taken in their technical sense, unless the context clearly indicates a contrary intention," the court commented upon that section in *Estate of O'Connell* (1972) 29 Cal.App.3d 526, 531 [105 Cal.Rptr. 590]: "The presumption of technical meaning established by section 106 is subordinate to the dominant purpose of finding and effecting the intent of the testator; it is an aid to be used in ascertaining that intent, not a tool by which the court frustrates the testator's objectives. The testator's intent cannot be governed from the technical meaning of one phrase, but only from the will as a whole [citation]."

Likewise, in *Jensen v. Nelson, supra,* 19 N.W.2d at page 600, the court stated: "The term 'lapsed legacy' is generally applied to a legacy which has become inoperative because of the death, in the lifetime of the testator, of the person named as legatee. 69 C.J. 1051, § 2255; 4 Page on Wills, Lifetime Ed. 162, section 1414; 24 Words and Phrases, Perm.Ed., pp. 194, 195. It is of no consequence here that the term 'lapsed legacy' is occasionally used to apply to a gift by will that fails for some reason other than the death of the donee in the testator's lifetime. Unquestionably, unless section 11861 [the Iowa antilapse statute] is applicable here, the legacy to the brother . . . lapsed."

In this case the antilapse statute would have applied had the testatrix made no reference to failed and lapsed gifts in the residuary clause. It seems unreasonable to assume that she made that reference for any purpose other than to assure that the antilapse statute did not apply.

■ Finally, respondents suggest that since the testatrix' brother predeceased her by more than five years, her failure to change her will following his death shows that she intended the devise to her brother to pass to respondents pursuant to the antilapse statute. This argument is also untenable. It appears more reasonable to assume that, following her

brother's death, the testatrix failed to change her will because she believed that she had already prevented the application of the antilapse statute by means of the language of the residuary clause. "Many other events other than testamentary incapacity may preclude a review of a will after the death of a legatee; for example, lack of knowledge of the death of a legatee; inability because of other illness or nonadjudicated mental incapacity, or the testator may simply have forgotten the terms of the will." (*Estate of Roberts, supra,* 9 Cal.App.3d at p. 752.) Here, the record contains no evidence bearing upon the state of the testatrix' health, either mental or physical, during the years following her brother's death. It may well be that her condition was such as to preclude her from making any alterations in the terms of her will.[1] However, even if it be assumed that she did possess such capacity, her failure to change her will following her brother's death does not warrant our interpreting the provisions of that will in the manner suggested by respondents.

The order appealed from is reversed. The trial court is directed to modify its order so as to provide that the testatrix' grandchildren, appellants Raymond J. Lovell and Barbara Lovell Stubbs, are entitled to the real property devised to the testatrix' brother, Louis Kehoe, in the proportions specified in the residuary clause of the will.

Taylor, P. J., and Kane, J., concurred.

The petition of respondent Reardon for a hearing by the Supreme Court was denied March 9, 1978.

---

[1]Appellants have suggested in their closing brief that this final argument raised by respondents is not made in good faith, in that respondents "are well aware that the decedent may well have been incompetent during that period of time. They know that their father, LOUIS I. KEHOE, had petitioned the Superior Court of the State of California, in and for the County of Alameda, for the appointment of a Conservator on September 8, 1966 (one day *before* the execution of the Will herein), Case No. 174580."