Barkley L. **BLEVINS** and Donald W. Blevins, Co–Executors of The Estate of Frank D. Peterson, Barkley L. Blevins, Individually, and Donald W. Blevins, Individually, Appellants,

v.

Ruth Ann Blevins **MORAN**, Audrey Blevins, Frank Blevins, William Blevins, Danny Blevins, Ginger Blevins Paxton, Robert Lee Peterson, Holly Petterson Tichendorff, Mark Cundiff Johnson, Lynn Hughes Johnson and Peterson Martin Johnson, and Judith May Blevins Smith, Appellees.

No. 1998–CA–002912–MR.

Court of Appeals of Kentucky.

Feb. 11, 2000.

---

James A. Shuffett, Lexington, Kentucky, for Appellant.

J. Patrick Sullivan Lexington, Kentucky, for Appellees.

Before: BUCKINGHAM, KNOPF, and McANULTY, Judges.

*OPINION*

KNOPF, Judge:

Brothers Barkley and Donald Blevins appeal from an October 30, 1998, judgment of Fayette Circuit Court construing the last will and testament of their uncle, Dr. Frank D. Peterson. Barkley and Donald are co-executors of their uncle's estate and principal beneficiaries under his will. They maintain that the trial court misapplied Kentucky's anti-lapse statute, KRS 394.400, in awarding certain of Dr. Peterson's bequests to the children of deceased beneficiaries rather than to them, Barkley and Donald, as remaindermen. For the following reasons, we affirm the judgment of the trial court.

Dr. Peterson died testate at the age of 97 in January 1996. The portions of his will pertinent to this dispute are as follows:

ITEM II

My wife, Jewell Peterson (formerly known as Jewell J. Callison), and I, both being of independent means, executed on November 5, 1979, prior to our marriage, an Antenuptial Agreement and Separate Property Contract wherein we released and waived any share or claim in the other's estate which would arise upon our marriage. Nevertheless, as a token of my love and affection for her, I devise and bequeath to her, if she survives me by at least sixty (60) days, the sum of Forty Thousand Dollars ($40,-000.00). I further devise and bequeath the condominium known as 410 The Woodlands at 480 East Main Street, Lexington, Kentucky, to my wife, Jewell Peterson, for her life, with the remainder in fee simple, in equal shares, to my

nephews, Donald W. Blevins and Barkley L. Blevins.

. . .

ITEM IV

I devise and bequeath to my sister, Nelle P. Blevins Johnson, the sum of Thirty Thousand Dollars ($30,000.00).

ITEM V

I devise and bequeath to my nephew, Royce E. Blevins, all shares of my common stock in that corporation known as Lexington Fire Protection Company which have not previously been given to him and all of my partnership interest in that partnership known as Bellaire Enterprises.

ITEM VI

To the following nephews and nieces, I devise and bequeath the sum of Fifteen Thousand Dollars ($15,000.00) each: (a) Marie Peterson Akridge; (b) Margaret Peterson Rittenhouse; (c) Elizabeth Peterson Reid; (d) Nadine Peterson Barnes; (e) Audrey Peterson Newcomb; (f) James D. Peterson; (g) Martin Douglas Johnson; (h) David Lewis Johnson; (i) Norman Allen Johnson; (j) Rodney Allen Beck; (k) Judith Blevins Smith; and (l) Mary Lou Malone.

I further devise and bequeath the sum of Fifteen Thousand Dollars ($15,000.00) each to the children of Barkley L. Blevins: (a) Roger Blevins; (b) John Blevins; (c) Susan Blevins; (d) Sandra Blevins Yount; (e) Amy Blevins; and (f) Lisa Blevins.

ITEM VII

All the rest, residue and remainder of my estate, both real and personal, wherever situated and of whatever nature, kind and description that I own at my death, including legacies and devises, if any, which may lapse or fail for any reason, I give, devise and bequeath to my nephews, Donald W. Blevins and Barkley L. Blevins in fee simple in equal shares.

Dr. Peterson's sister, Nelle P. Blevins, died before he did, as did his nephews

Royce E. Blevins, James D. Peterson, and Martin Douglas Johnson. A dispute arose over what was to become of the gifts to these four individuals. The appellees, the surviving issue of the four pre-deceased beneficiaries, successfully maintained in the trial court that under the anti-lapse statute they were entitled, respectively, to their ancestors' bequests. That statute, KRS 394.400, provides as follows:

> If a devisee or legatee dies before the testator, or is dead at the making of the will, leaving issue who survive the testator, such issue shall take the estate devised or bequeathed, as the devisee or legatee would have done if he had survived the testator, unless a different disposition thereof is made or required by the will.

There is no dispute that the four beneficiaries died before the testator or that each left issue who survived him. The survivors take the estates granted their ancestors, therefore, "unless a different disposition thereof is made or required by the will." The trial court agreed with the appellees that the will does not make or require a different disposition. Donald and Barkley maintain, however, that the will's residuary clause, ITEM VII above, by including in the remainder "legacies and devises . . . which may lapse or fail for any reason," was meant to operate in place of the anti-lapse statute. The trial court erred, they insist, by concluding otherwise.

■ The trial court entered its judgment in response to cross-motions for judgment on the pleadings. Because the trial court considered matters outside the pleadings, however, we shall review its decision as though it were a summary judgment. CR 12.03; *Old Mason's Home of Kentucky, Inc. v. Mitchell,* Ky.App., 892 S.W.2d 304 (1995). Because summary judgments involve no fact finding, this Court reviews them *de novo,* in the sense that we owe no deference to the conclusions of the trial court. As did the trial court, we ask whether material facts are in

dispute and whether the party moving for judgment is clearly entitled thereto as a matter of law. Under this state's rules of practice, summary judgments are to be granted cautiously; they are appropriate only when it appears impossible for the non-movant to prove facts establishing a right to relief or release, as the case may be. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991).

■ This case presents a question of testamentary construction, and, as the trial court noted, "[t]he cardinal rule of testamentary construction is to ascertain the intention of the testator and give it effect...." *Donelson's Ex'r v. Coates*, Ky., 299 Ky. 608, 186 S.W.2d 420, 422 (1945). Other rules of construction, including the anti-lapse statute itself, are to be invoked only when the testator's intent is otherwise unclear. *Prewitt v. Prewitt's Executors*, 303 Ky. 772, 199 S.W.2d 435 (1947).

The appellants summarize the matter succinctly as a dispute over the meaning of the phrase "lapsed" legacy. Under the common law, they note, a legacy "lapsed" if, among other reasons, an individual donee pre-deceased the testator. Typically, lapsed gifts passed according to the residuary clause, if there was one, or according to the laws of intestacy, if there was not. The anti-lapse statute, they argue, does not alter this meaning of "lapse," which still applies to any legacy the beneficiary of which pre-deceases the testator. The statute merely alters the consequences of lapse in certain circumstances. The residuary clause's reference to "lapsed" legacies or devises, therefore, encompasses the gifts at issue here and preempts KRS 394.400.

The trial court, on the other hand, understood KRS 394.400 as preventing the "lapse" of the contested gifts in the first place, thus rendering the will's residuary clause inapplicable to them. The residuary clause, according to the trial court, was intended merely to ensure that any gifts that lapsed or failed under the current law of wills—including the anti-lapse statute—

would not pass by the law of intestacy. It did not manifest an intention to avoid the anti-lapse statute.

The appellants rely on four cases from foreign jurisdictions that support their position in this semantic argument. *Estate of Salisbury*, 76 Cal.App.3d 635, 143 Cal. Rptr. 81 (1978); *In re Phelps' Estate*, 147 Iowa 323, 126 N.W. 328 (1910); *In re Neydorff*, 193 A.D. 531, 184 N.Y.S. 551 (1920); and *Jensen v. Nelson*, 236 Iowa 569, 19 N.W.2d 596 (1945). In each of these cases, a reference in the residuary clause to "lapsed legacies," such as the reference in Dr. Peterson's will, was understood as implying the testator's intention to avoid the effect of the anti-lapse statute. Indeed, the Court in *In re Neydorff*, referring to the following language from the will: "All the rest, residue and remainder of my estate, ... including lapsed legacies, I give and devise to my niece." opined that "it must be obvious that the testator referred to 'lapsed legacies' as those legacies which were defeated by the prior death of the beneficiaries." *Id.* at 553. And the California Court in *Estate of Salisbury* was likewise certain that "the testatrix's reference to failed and lapsed gifts in the residuary clause can only be interpreted as indicating her intent to substitute the residuary beneficiaries in place of her brother should he predecease her." *Id.* at 85.

■ The trial court took pains to distinguish these cases from the present one. The court noted, for example, that the California statute at issue in *Estate of Salisbury* recalls expressly the common-law rule of lapse and merely provides for an exception to it:

> If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute another in his place; except that when any estate is devised or bequeathed to any kindred of the testator, and the devisee or legatee dies before the testator, having lineal

descendants, or is dead at the time the will is executed, but leaves lineal descendants surviving the testator, such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he survived the testator.

KRS 394.400, on the other hand, provides that the lineal descendants of a deceased beneficiary "shall take" that beneficiary's gift unless a contrary intention appears in the will. Kentucky's presumption against lapse is thus far stronger than California's. Even to the extent that the appellants' foreign authorities are not obviously distinguishable, the trial court (citing *Chenault's Guardian v. Chenault's Estate*, 10 Ky. L.Rptr.840, 9 S.W. 775 (1888) and *Nance's Executors v. Akers*, 165 Ky. 461, 177 S.W. 235 (1915)) regarded them and the appellants' use of them as inconsistent with KRS 394.400's pronounced anti-lapse intent and spirit. Our anti-lapse statute effects a greater departure from the common law than is reflected in the appellants' cases, the trial court wrote, "by *preventing* a lapse from occurring . . . unless the testator *clearly expresses a different disposition of that person's gift.* . . . This requires the testator to state, *affirmatively,* that another person is to take a particular gift should the primary named legatee predecease the testator." (Emphasis in the original). Pointing again to the cases cited above, however, and insisting upon their understanding of the word "lapse," the appellants maintain that the provision for lapsed gifts in the residuary clause of Dr. Peterson's will is, in fact, an affirmative statement to that effect. We disagree.

■ Neither the parties, the trial court, nor we have discovered any Kentucky case addressing the specific residuary-clause language at issue here. It is otherwise well established, as the trial court observed, that where it applies—*i.e.*, where a will beneficiary predeceases the testator and leaves issue who survives the testator—the anti-lapse statute creates a rebuttable presumption that the surviving issue

was meant to be substituted in the will for its ancestor. *Murray v. Murray*, Ky., 564 S.W.2d 5 (1978). With respect to the narrow issue before us—whether the residuary clause of Dr. Peterson's will rebuts the presumption—we must begin by acknowledging that the 1990 revision of the Uniform Probate Code (in which that Code's anti-lapse provision was markedly expanded) supports the appellants' position. A comment to section 2–603 of the revision discusses as follows how a testator might express an intention "contrary" to the anti-lapse statute:

> Under Section 2–601, the rule of Section 2–603 yields to a finding of a contrary intention. A foolproof means of expressing a contrary intention is to add to a devise the phrase "and not to [the devisee's] descendants." . . . In addition, adding to the residuary clause a phrase such as "including all lapsed or failed devises," adding to a nonresiduary devise a phrase such as "if the devisee does not survive me, the devise is to pass under the residuary clause," or adding a separate clause providing generally that "if the devisee of any nonresiduary devise does not survive me, the devise is to pass under the residuary clause" makes the residuary clause an "alternative devise."

Kentucky, of course, has not adopted the Uniform Probate Code, so that Code's authority is persuasive only. The Probate Code's anti-lapse provision, furthermore, extends now to nearly three pages of printed text. Its usefulness as a guide to KRS 394.400 is thus severely limited.

Other commentators have discussed the same residuary-clause language critically. Characterizing that language as "a form-book clause to avoid," Professor Patricia Roberts has written that

> [a]n interesting contrary intent issue is raised by language that is included in some form-book residuary clauses. The clause reads "all of the residue of my estate, including any lapsed devises, shall pass to." . . . If a non-residuary

devisee (A) dies before T, the question is whether A's gift goes to the residuary devisee even if A is survived by a child who qualifies as a substituted taker under the lapse statute. A's child will argue that the reference to lapsed devises in the residuary clause means "any gifts that are not saved by the lapse statute." Although this interpretation renders the clause surplusage, it is nonetheless plausible considering that standard wills clauses often contain superfluous language. Courts have held, however, that this language indicates intent contrary to the lapse statute so that the residuary devisee takes rather than A's child. [citing the same four cases cited by the appellants]. It is doubtful that this clause was consciously chosen in order to give A's gift to the residuary devisee rather than to A's child. The term "lapse" is often used broadly, as it is probably used here, to refer to gifts that fail for any reason, despite the fact that, as such, the inclusion of this clause is surplusage. In any event, the clause should be avoided since it creates ambiguity. If it is T's intent, T should expressly state that the residuary devisee takes A's share if A predeceases T.

Roberts, *"Lapse Statutes: Recurring Construction Problems,"* 37 Emory Law Journal 323, 365–66 (1988).

Similarly, Professor Erich Kimbrough has observed that

[s]ome courts recognize other methods of manifesting contrary intent. For example, in some jurisdictions, a residuary gift that states "the remainder of my estate, including any lapsed devises, I give to A" indicates the testator's intent that the statute not operate. [citing *Estate of Salisbury, supra*]. This type of residuary clause presents confusion because a court may view a devise that can be saved by an anti-lapse statute as not having lapsed; consequently, such a court may not accept the language in the residuary clause as evidence of an intent that the statute not apply.

Kimbrough, *"Lapsing of Testamentary Gifts, Antilapse Statutes, and the Expansion of Uniform Probate Code Antilapse Protection,"* 36 William and Mary Law Review 269, 291–92 (1994).

We agree with these commentators and with the trial court that the residuary clause of Dr. Peterson's will does not, by itself, establish Dr. Peterson's intent to avoid the operation of KRS 394.400. As the appellants' authority shows, such a clause may certainly be considered evidence of such an intent, but without confirmation elsewhere in the will, this clause is simply too ambiguous to override in all cases our statute's strong presumption against lapse.

We further agree with the trial court that in this case the presumption against lapse survives the residuary provision for "lapsed" gifts. Although Dr. Peterson's special regard for the appellants is manifest in his will, so too, we believe, is his desire to distribute a significant portion of his estate among the many other branches of his widening family. The residuary clause in this instance seems to us to reflect more a cautious draftsman's desire to be sure that no part of the estate would pass by intestacy (especially the several charitable bequests) than it does Dr. Peterson's intent to avoid KRS 394.400. In the first place, in ITEM II above, the bequest to Dr. Peterson's wife, Jewell, the draftsman demonstrated that he well knew how to provide clearly for a personal, contingent bequest. As discussed above, the residuary clause falls far short of this same standard of clarity. The deceased donees, furthermore, were all heads of their familial lines, and, with one possible exception, the gifts to them suggest no reason to think that they were meant to be personal rather than lineal, as is presumed under the anti-lapse statute. The one possible exception is the gift to Nelle P. Blevins Johnson, Dr. Peterson's sister, whose children, or at least some of them, were also beneficiaries. Some courts have found that such an express provision for a

beneficiary's descendants suggests an intent to substitute that provision for the anti-lapse statute, but again the inference is not a strong one unless there are other supporting considerations. Roberts, *supra*, at 362–64. Here the will provides none. Moreover, Dr. Peterson apparently advanced to his sister during her lifetime most of this testamentary gift. The evidence of contrary intent here is far too slim to justify a reversal of the judgment in order to disturb that gift now or to redistribute the balance of it.

In sum, although in other jurisdictions the result would perhaps be different, we are persuaded that the recital in a will's residuary clause that the residue is to include lapsed and failed gifts is not by itself sufficient evidence of a testator's contrary intent to overcome the strong presumption against lapse provided by KRS 394.400. Such clauses are to be construed, like all other will clauses, in light of the entire document, and are only to be given preclusive effect when such clearly was the testator's intent. No such clear intent appearing in this case, we affirm the October 30, 1998, judgment of Fayette Circuit Court.

ALL CONCUR.