[Civ. No. 15623. First Dist., Div. One. Feb. 15, 1954.]

Estate of JOSEPH F. NUNES, Deceased. JOE E. NUNES, Appellant, v. JOE E. NUNES, Respondent.

Rankin, Oneal, Luckhardt, Center & Hall for Appellant.

Foley, Foley, Andreuccetti & Foley and Machado & Machado for Respondent.

PETERS, P. J.—The basic problem presented on this appeal is whether the seventh paragraph of the will of Joseph F. Nunes so clearly describes the respondent as recipient of the bequest therein provided as to preclude the introduction of extrinsic evidence that would tend to show that, in fact, the decedent intended to leave the bequest to appellant. The trial court determined, as a matter of law, that respondent was the only person precisely described in the will, excluded the proffered extrinsic evidence to show a contrary intent, and instructed the jury to bring in a verdict for respondent. From the judgment entered on that verdict this appeal is taken.

Respondent is admittedly the son of a half brother of the deceased, and so is the nephew, or nephew of the half blood, of the deceased. Respondent's legal name is Joseph E. Nunes, or Joseph Nunes, although occasionally he calls himself, or is called, Joe. Appellant is admittedly a second cousin of the deceased, but was usually referred to by the deceased as his "nephew." Appellant's name is Joe E. Nunes, although occasionally he calls himself, or is called, Joseph.

The seventh paragraph of the lawyer-drafted will reads as follows: "I hereby give, devise and bequeath unto JOE E. NUNES, a nephew of mine, a one-quarter interest in my ranch located at Hollenbeck Avenue, near Sunnyvale, California."

There is no question as to the identity of the land involved. During probate this property was sold, and the value of the one-quarter interest here involved has been fixed at about $25,000. Respondent instituted this proceeding to determine heirship, claiming to be the person described in the will. Appellant answered, claiming that he was the "Joe E. Nunes, a nephew of mine" described in the questioned paragraph.

Respondent testified on his own behalf to the effect that his name was Joseph E. Nunes; that he was also known as Joe E. Nunes; that he was, during the lifetime of the deceased, acquainted with him, and that he was a nephew of the deceased. On cross-examination he admitted that his birth certificate did not contain any middle name or initial, and was not sure whether it named him as Joseph or Joe; that he started to use the "E" in his name after confirmation; that many of his acquaintances called him Joe; that for

a long time his checking account has been in the name of Joseph E. Nunes, and that he signed checks in that fashion; that his mailbox bears the name of Joseph E. Nunes; that his trucks bear that name, and that the permit to operate as a radial carrier was issued in that name; that he registered to vote as Joseph E. Nunes; that his father called him Joe; that he does not use Joseph exclusively in his business dealings; that he spent three years in the army under the name of Nevada E. Gibson, but that he assumed his real name upon discharge. On redirect, there was introduced the high school diploma of respondent and certain business receipts wherein he was named Joe E. Nunes, and a chauffeur's license naming him Joe Ernest Nunes. Altogether some 67 invoices, receipts and bills, in which respondent was described in various ways, were introduced. Then the probate file in the estate proceeding was admitted into evidence. It included the will here involved. The residuary clause of that will was directed to the nieces and nephews of the deceased. The file also included a petition of one Mary Alves to determine heirship under this clause, in which it was adjudicated that respondent was a nephew within the meaning of that clause. After the introduction of this evidence the respondent rested.

Appellant opened his case by introducing the birth certificate of respondent which named him as Joseph Nunes. The will of respondent's father was then introduced. It refers to respondent as Joseph Nunes. Respondent's voting registration, which he signed with the name of Joseph E. Nunes, and appellant's registration signed Joe E. Nunes were also introduced. Appellant testified that he had lived on the ranch described in paragraph seventh of the will since 1930, and that he was a second cousin of the deceased. After a discussion between court and counsel, the court ruled that respondent was the only person that fitted the description in paragraph seventh, and that extrinsic evidence to show that appellant was intended was not admissible. The basis for this ruling is disclosed by the following statement: "Now, I take it from the testimony here . . . that this will does accurately and definitely describe the claimant, Joseph E. Nunes, whom it refers to as Joe E. Nunes, and whom it calls his nephew, and that there is, therefore, no ground for invoking the rule of either of these exceptions; and I place no emphasis or importance on the fact that the will calls him Joe, and his Christian name and his business name is Joseph. I think that's immaterial."

The appellant then made an offer of proof. By the testimony of the attorney who drafted the will, and who was named executor therein, he offered to prove that the attorney had known the deceased intimately for at least 20 years; that during that period he had known of only one nephew of the deceased named Joe E. Nunes, and that that was appellant; that during the preparation of the will, and during the 20 years of friendship, he had never heard the deceased refer to any other person than appellant when he talked about Joe E. Nunes; that when deceased called at the office of the attorney to give instructions about the will he told the attorney he had several nieces and nephews whose addresses were unknown to him, but when the deceased discussed the bequest that ultimately was put into paragraph seventh he specifically directed that he wanted the one-quarter interest "in that ranch property upon which his nephew, Joe E. Nunes, was then working and then residing," to go to that Joe E. Nunes; that he then described that Joe E. Nunes "as his nephew living on the ranch"; that the attorney had made notes of these conversations and such notes are still in existence and are offered in evidence; that in those notes it appears that the deceased directed that the ranch interest here involved should go to "Joe E. Nunes, my nephew on the ranch." The testimony of the office associate of the attorney was offered in corroboration. By the attorney who drafted the will appellant also offered to prove that after the will was drafted he had at least 20 conversations with the deceased about a proposed gift by deceased to appellant of several acres of land; that during all of these conversations the deceased always referred to appellant as his nephew on the ranch; that such gift was consummated before the death of decedent.

The appellant also offered, through the testimony of contractors, buyers, insurance men, employees, and neighbors, all friends of the deceased, to prove that in their many conversations with deceased he had always referred to appellant as his "nephew on the ranch," and had always professed a high regard for him, and had never referred to respondent as his nephew. In addition, the testimony of one Mary Malarque was offered. She had been raised by the deceased and his wife, and had lived with them from childhood until her marriage. Her offered testimony was to the effect that she had lived on the ranch in question from 1916 to 1939; that during the entire period she never heard deceased refer to

respondent as his nephew, nor did she ever see respondent at the home of deceased or know of any such visit; that during this period she did hear deceased, on innumerable occasions, refer to appellant as his nephew Joe, or as his nephew on the ranch.

In addition, the testimony of three named persons, all of Portuguese descent and two of whom were Catholic priests, was proffered to the effect that in Portugal, the native country of deceased, it is the common custom and practice to call a second cousin, nephew or uncle. A large number of documents, all describing appellant as Joe E. Nunes, was offered.

The court ruled that the objection to all this offered testimony was sustained, and then directed the jury to bring in the following verdict: "We the Jury, . . . find and return our verdict herein as follows: one, that Petitioner is a nephew of Joseph F. Nunes, also known as J. F. Nunes, Deceased; second, that Respondent is not a nephew of said Deceased, but is a second cousin of the Deceased; third, that the Petitioner is the person described in paragraph 7 of the will of said Deceased."

The issue on this appeal is clear cut. Does the phrase "Joe E. Nunes, a nephew of mine" so exactly describe the respondent that extrinsic evidence to show that appellant was in fact intended to be so described was not admissible? Is there an ambiguity as to the identity of the legatee? Respondent argues that, although there are two persons named Joe E. Nunes, he is the only one that is a nephew, and so the only one described in the will. Appellant argues that he is the only person named Joe E. Nunes that fits the description in the will, and that Joe and Joseph are not the same name. He concedes that he is not a blood nephew, but urges that, for identification purposes, the deceased's constant reference to him as nephew is sufficient to at least raise an ambiguity to show who was meant.

The rules of law applicable to this problem are not seriously in dispute. The basic statutory provision applicable is section 105 of the Probate Code. It provides: "Where there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from

the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations.''

The basic rule of construction is, of course, to give effect to the intention of the testator. That intention must be ascertained from the provisions of the will, if possible. ██ If the terms are certain and free from ambiguity, effect must be given thereto and no speculation is permitted as to whether an intention may have existed contrary to that expressed. But if the language used is ambiguous, extrinsic evidence may properly be considered. (See, generally, cases cited 26 Cal. Jur. p. 883, § 199 et seq.)

██ If a latent ambiguity exists, such ambiguity may be removed by extrinsic evidence. One of the leading cases on this subject is *Estate of Donnellan,* 164 Cal. 14 [127 P. 166]. There the following provision was presented for construction: ''to my niece Mary, a resident of New York, said Mary being the daughter of my deceased sister Mary.'' The deceased sister Mary had two daughters, Annie Sheridan and Mary Smith. Annie was a resident of New York. Mary lived in Ireland and had never been in the United States. The court held that there was a latent ambiguity because no one person exactly fitted the description in the will. If niece Mary was intended, she had never been in New York, while if Annie was intended, the wrong name had been used in the will. The following statement appearing in that case has been frequently quoted (p. 20): ''Broadly speaking, there are two classes of wills presenting latent ambiguities, for the removal of which ambiguities resort to extrinsic evidence is permissible. The one class is where there are two or more persons or things exactly measuring up to the description and conditions of the will [giving examples]. The other class is where no person or thing exactly answers the declarations and descriptions of the will, but where two or more persons or things in part though imperfectly do so answer.''

Another frequently cited case is *Taylor* v. *McCowen,* 154 Cal. 798 [99 P. 351]. In that case the court quoted, with approval, the following statement from *Patch* v. *White,* 117 U.S. 210, 217 [6 S.Ct. 617, 29 L.Ed. 860] (p. 802): '' 'It is settled doctrine that as a latent ambiguity is only disclosed by extrinsic evidence, it may be removed by extrinsic evidence. Such an ambiguity may arise upon a will, either when it names a person as the object of a gift, or a thing as the subject of it, and there are two persons or things that answer the name or description; or, secondly, it may arise when the

will contains a misdescription of the object or subject; as where there is no such person or thing in existence, or if in existence, the person is not the one intended, or the thing does not belong to the testator. . . .' ''

Both sides agree that the above two quotations, and section 105 of the Probate Code, state the applicable law. It is not necessary, therefore, to cite the other cases where these rules have been applied. (See for a recent application of some of these rules, *Estate of Sargavak,* 41 Cal.2d 314 [259 P.2d 897].) It is in the application of these basic and well settled principles to the facts of this case that the parties differ. If paragraph seventh of the will contains a latent ambiguity as to the identity of the legatee, the trial court should have admitted the proffered testimony, and the judgment must be reversed. If it does not, the trial court properly excluded the extrinsic evidence, and the judgment should be affirmed.

One case relied upon by respondent as being ''directly in point'' is *Estate of Lyons,* 36 Cal.App.2d 92 [96 P.2d 1018]. In that case paragraph seventh of the will made a bequest to Cornelius Lyons describing him as a cousin, and as being the child of John and Mary Lyons of Eighteenth and Church Streets, San Francisco. Paragraph fourteenth nominated Cornelius Lyons of 630 Eleventh Avenue, San Francisco, as one of the executors. A codicil executed four years later left a bequest to Cornelius Lyons ''mentioned in Paragraph Seventh'' of the will. There were two persons with the name of Cornelius Lyons. The Cornelius Lyons mentioned in paragraph seventh was a second cousin of the deceased, the one mentioned in paragraph fourteenth, a first cousin. The latter tried to show that the reference in the codicil to paragraph seventh was a mistake and that paragraph fourteenth was intended. The court quite properly held that extrinsic evidence was not admissible for this purpose because there was no ambiguity in the will as to the identity of the legatees. Had there been such an ambiguity, such evidence would have been admissible. Obviously, the case is of little help in determining, in the instant case, whether an ambiguity as to the identity of the named legatee exists.

It is our opinion that a latent ambiguity as to the legatee named in paragraph seventh exists. No one person exists who precisely fits the description of ''Joe E. Nunes, a nephew of mine.'' Respondent is a nephew, or at least a nephew of the half blood, but he is not named Joe E. Nunes. His name is Joseph and not Joe. Even though, for certain

purposes, the two names may have the same legal effect, for descriptive purposes they are not necessarily identical. The evidence shows that respondent was named Joseph on his birth certificate and generally used that name in his business and social relationships, although occasionally being called Joe. Appellant, on the other hand, is named Joe, and generally uses that name, although, on occasion, is called Joseph. For purposes of identification the two names may be entirely distinct. Thus if one wanted to name the actor and comedian, the name Joe E. Brown would immediately identify him to most persons. But the name Joseph E. Brown would not necessarily identify the same person or identify him in the mind of the hearer. Moreover, the name Joe is not necessarily an abbreviation at all. It may be, and frequently is, the full name of the person involved. Even when used as an abbreviation, it is not necessarily, inevitably, and universally recognized as the abbreviation for Joseph. It may just as well be an abbreviation for Josephus, Josh, Jonah, Josiah, or even for the name John. (See 38 Am.Jur. p. 599, § 8.)

It is also by no means certain that respondent is the only "nephew" of the deceased. ▉ The word "nephew" does not necessarily and exclusively describe a legal blood relationship. It may have been used to identify a person. It is a matter of common experience that persons often refer to intimates by calling them a name implying blood relationship, such as son, nephew, niece, my boy, etc., when no such relationship exists. ▉ While words in a will are to be given their usual and ordinary meaning, evidence of surrounding circumstances can sometimes be used to show the meaning of the words used. (See 3 Page on Wills, Lifetime ed., p. 164.) In *Estate of Kessing,* 123 Cal.App. 119 [10 P.2d 1015], it was held that one described in a will as "my nephew Ivan Kessing" could share in the estate even though not in fact a blood nephew of the deceased. Thus, where one is described by a relationship which in fact does not exist, he may, in some cases, show that the testator intended him by the words used.

Appellant is, of course, not a blood nephew of the deceased, while respondent does fit that description. If there were not a latent ambiguity as to the identity of Joe E. Nunes, it could be argued that evidence that the deceased intended a stranger in blood and not a blood nephew was not admissible. But because there is no one person that completely fits the

description of "Joe E. Nunes, a nephew of mine," there exists a latent ambiguity as to the identity of the named legatee. Once it is determined that Joseph and Joe are not necessarily the same name, extrinsic evidence is admissible to show who was intended. That includes evidence, here proffered but refused admission, that the deceased by the word "nephew" intended to identify appellant.

Once it is determined that extrinsic evidence is admissible because of the latent ambiguity as to identity, the limitations of section 105 of the Probate Code do not apply to instructions given to the drafter of the will by the testator. Such declarations, where admissible as here, may be used to prove intent. (*Estate of Dominici,* 151 Cal. 181, 185 [90 P. 448] ; *Estate of Little,* 170 Cal. 52, 54 [148 P. 194].)

The evidence here offered should have been admitted. Its exclusion requires a reversal.

The judgment appealed from is reversed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied March 17, 1954, and respondent's petition for a hearing by the Supreme Court was denied April 14, 1954.