138 Cal.App.2d 363 (1956)
Estate of ELIZABETH TATE CARROLL, Deceased. W. A. ROBISON, as Public Administrator etc., et al., Respondents,
v.
CHARLES H. TATE et al., Appellants.
Civ. No. 16763. 
California Court of Appeals. First Dist., Div. One. 
Jan. 10, 1956.
 Dinkelspiel & Dinkelspiel, Richard C. Dinkelspiel and Norman Coliver for Appellants.
 John B. Ehlen for Respondents.
 BRAY, J.
 Appellants appeal from the decree confirming report of referee and determining interests in an estate.
 Questions Presented
 Was respondent George E. Deputy [fn. *] disinherited by his aunt's will so as to prevent the application of the antilapse statute (Prob. Code, 92), and was extrinsic evidence admissible?
 Facts
 Elizabeth T. Carroll died in 1952, leaving a holographic will dated July 7, 1947, in which she bequeathed all her estate to her sister Margaret L. Deputy "to be used as She may see fit." Then followed: "my only brothe Harry Tate & is to receive one Dollar, & my nefhews also $1.00 each Any will make before is null & void." Margaret died in 1951. Margaret left respondent as her only lineal descendant. The "nefhews" referred to in the will are respondent, son of Margaret, and appellants, sons of a predeceased brother and a predeceased sister. The probate court refused to allow *365 extrinsic evidence purporting to show that testatrix intended to completely disinherit respondent. In the distribution of the estate it distributed $1.00 each to appellants and the brother Harry, [fn. ] and then applied section 92 and distributed to respondent the share left by the will.
 Application of Antilapse Statute
 Section 92 provides: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute another in his place; except that when any estate is devised or bequeathed to any kindred of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants ... such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he survived the testator."
 [1] While that portion of the section dealing with legatees predeceasing the testator and leaving lineal descendants says nothing about the testator's intention it is universally held that antilapse statutes are not automatically applied, but the testator's intention must, if possible, be ascertained. The rule applicable is well set forth in Page on Wills, volume 4, section 1423, page 181: "The statutes which prevent lapse are not mandatory. They do not apply if the will shows that testator did not intend that the property should pass in accordance with the provisions of the statute. ... If testator's intention to dispose of his property in case of the death of the first beneficiary, in some way inconsistent with the statute which prevents lapse, is shown with a reasonable degree of certainty, effect will be given to such intention. On the other hand the statute will apply unless testator's intention [to] exclude its operation is shown with reasonably [sic] certainty." See also 92 A.L.R. 846 et seq., and Estate of Steidl, 89 Cal.App.2d 488, 490 [201 P.2d 58]: "It is likewise established that the court is bound to read into the will section 92 of the Probate Code." It is well established that "the intention of the testator controls but to render the statute inoperative a contrary intent on the part of the testator must be plainly indicated." (Estate of Steidl, supra, at p. 490.) [2] The testator is presumed to know the law and that the court will if possible read section 92 into the will. (Idem, p. 490.) [3] The testator's intention must be ascertained from the provisions of the will, if possible, *366 that is, unless the language of the will is ambiguous. (Estate of Nunes, 123 Cal.App.2d 150 [266 P.2d 574].)
 Thus the question of whether the will was ambiguous so as to permit extrinsic evidence to explain it, is the first one presented. Having in mind that testatrix is presumed to know that, if possible, we are required to read section 92 into the will, we then have a will which in effect leaves the estate to testatrix's sister, but in the event the latter predeceases the former, to her lineal descendant, respondent, unless the bequest of $1.00 to him clearly indicates an intention on the part of the testatrix to leave him only that sum even if his mother predeceases testatrix. We find no such intention in the will. [4] We do not believe that a bequest of a nominal sum, although in effect it is a disinheritance under the conditions set forth in the will, namely, the ability of the chief legatee to take, is evidence of an intention of the testatrix that in the event the chief legatee cannot take, the one given the nominal sum is to be disinherited. In other words the disinheritance by the mere bequest of a nominal sum is not a complete disinheritance under all circumstances.
 In Estate of Steidl, supra, 89 Cal.App.2d 488, it was held that in construing a will which left the estate to "my brothers and sisters ... to be divided equally between them," (p. 489) section 92 should be considered with the will and then the intention of the testator would be held to be that the lineal descendants of any sister or brother predeceasing the testator would inherit the ancestor's share.
 We have been unable to find, nor have we been cited to, any case holding that the mere bequest of a nominal sum constitutes an intent to disinherit under other circumstances than those contemplated in the will. [5] The intent to disinherit must appear on the face of the will by words indicating such "intent directly, or by implication equally as strong." (In re Stevens, 83 Cal. 322, 329 [23 P. 379, 17 Am.St.Rep. 252].) [6-8] The rule is well stated in 28 Ruling Case Law, section 190, page 229: "The heirs of a testator are favored by the policy of the law and cannot be disinherited upon mere conjecture, and when the testator intends to disinherit them he must indicate that intention clearly, either by express words or by necessary implication. This rule of construction, however, is one which applies only in doubtful cases, for the will of the testator, if expressed in clear and unambiguous language, must prevail, even though it disinherits the heirs. A necessary implication is one which results from so strong a probability of intention that an *367 intention contrary to that imputed to the testator cannot be supposed." (See also Estate of Nunes, supra, 123 Cal.App.2d 150, 155, and 57 Am.Jur. 1160, p. 757.)
 The providing of a nominal gift of $1.00 has often been held to be a disinheriting provision. In Blackstone's day it was referred to as "cutting off the heir with a shilling." (2 Blackstone's Com., 503.) "A bequest of a mere nominal sum--usually $1--is, for all practical purposes, equivalent to complete disinheritance, and is treated by the courts as such. No case has been found in which a distinction has been drawn or suggested between the effect of a disinheriting clause and one making a merely nominal gift." (152 A.L.R. 723, 725.)
 However, as pointed out hereinbefore, the cases applying this rule did not deal with a change in the condition contemplated by the will. Moreover, in the California cases on disinheritance the language of disinheritance was more than the mere bequest of a nominal sum. Thus, in Estate of Kurtz, 190 Cal. 146 [210 P. 959], the testator stated that he generally and expressly disinherited any person claiming to be an heir at law and giving such person if successful in establishing heirship $1.00 only. A similar situation appears in Estate of Minear, 180 Cal. 239 [180 P. 535], and in Estate of Lindsay, 176 Cal. 238 [168 P. 113], where the bequests to such persons as might prove heirship were $5.00. In Estate of Cochran, 116 Cal.App.2d 98 [253 P.2d 41], and Estate of Price, 56 Cal.App.2d 335 [132 P.2d 485], the bequests were $1.00 to anyone who might contest the particular will. In our case, neither by the expressed intent of the testatrix, nor by necessary implication, does it appear that, by leaving respondent and her other four nephews $1.00 each, she intended to disinherit him in the event of the death of his mother.
 [9] We find no ambiguity in the will after reading section 92 into it and hence there is no necessity for extrinsic evidence of testatrix's intention.
 A case somewhat in point is Estate of Murphy, 9 Cal.App.2d 712 [50 P.2d 828]. There a son, Louis, left his entire estate to his mother, and expressly omitted to provide for his brother William. The mother predeceased Louis, and William claimed the entire estate under section 92. It was contended that as Louis expressly omitted to provide for William, such omission constituted disinheriting him and that section 92 could not be applied. In holding that the *368 will evidenced no intention to disinherit William under the changed circumstances, the court quoted from Estate of Hittell, 141 Cal. 432 [75 P. 53] (p. 713): " 'As in the case of innumerable wills, the testator did not anticipate changed conditions, and did not provide for the event of the death during his lifetime of one of the named devisees, which he could easily have done, if he so desired, by giving the property to them or to the survivor of them. What his actual intent may have been after the conditions were changed by the death of Mary we have no means of knowing, except from the fact that he allowed the will to stand as originally executed. ...' " In the Hittell case, the testator had left his entire estate to two strangers of the blood, Anna and Mary, and had expressly excluded a brother, a sister and other heirs at law. Mary predeceased the testator. The court in the Murphy case pointed out that in the Hittell case the reference in the will by the testator to his relatives did not express an intention that they should not share in his estate under any circumstances whatever, but that his intention was that they should not share if both Anna and Mary should survive him. Again, the court said (p. 714): "There is no language which would convey an intention on the part of the testator to 'substitute another' in the words of the code section if his mother should predecease him; but, so far as appears from the document itself, it is reasonable to assume that the testator intended in that event to let the law take its course. We are faced with these inescapable facts: the devisee died during the lifetime of the testator and the will does not show an intention to substitute another in her place. The estate would therefore go to her lineal descendant, the appellant herein, by operation of the statute. Thus, in effect, the statute substitutes the appellant for the deceased devisee and it is immaterial whether we say he takes by reason of the will or by operation of the statute. The controlling point is that the will did not provide for the contingency of the death of the devisee and the statute supplies that omission."
 In Larrabee v. Tracy, 21 Cal.2d 645 [134 P.2d 265], the will expressly disinherited any person claiming to be an heir at law of the testator other than those mentioned in the will. One-sixth of his estate was given to testator's cousin Kate. She predeceased the testator, leaving as her lineal descendant the respondent who was not one of those specifically mentioned in the will. The court applied section 92 and decreed Kate's share to the respondent, holding that the disinheritance clause did not prevent the application of *369 the section, saying (p. 649): "As said in Estate of Tibbetts, 48 Cal.App.2d 177, 179 [119 P.2d 368]: 'the persons acquiring rights under said statute acquire such rights as "statute-made" devisees or legatees ... Such rights are acquired regardless of whether such persons are or are not heirs of the testatrix.' "
 [10] It must be borne in mind that "The construction of a will is preferred which leaves no intestacy as to any part of the estate." (Estate of McLaughlin, 97 Cal.App. 485, 489 [275 P.2d 875]; see also Estate of Olsen, 9 Cal.App.2d 374, 379 [50 P.2d 70]; Estate of Moore, 135 Cal.App.2d 122, 130 [286 P.2d 939].)
 Estate of Goetz, 13 Cal.App. 292 [109 P. 492], is not in point. There the testator expressly provided that in the event of the death of any legatee, the legacy to such person must lapse and be added to the residue of his estate.
 [11] Appellants contend that section 1856, Code of Civil Procedure, permits the introduction of extrinsic evidence here. [fn. *] As we have pointed out, there is no ambiguity in the will and hence the section does not apply.
 The order is affirmed.
 Peters, P. J., and Wood (Fred B.), J., concurred.
NOTES
[fn. *] *. The other respondent is the Public Administrator and administrator with the will annexed. "Respondent" throughout this opinion refers to George E. Deputy.
[fn. ] . Harry made no appearance in the estate.
[fn. *] *. It is rather interesting that although enacted in 1873, and stating that "The term agreement includes ... wills," neither counsel nor we have found a case in which the section has been applied to the interpretation of wills. While there is some discussion in the briefs concerning section 105, Probate Code, both parties agree that it does not apply here, so we deem it unnecessary to discuss the section.