[Civ. No. 20668.   First Dist., Div. Three.   June 7, 1963.]

Estate of HENRIETTA VASCHE MOY, Deceased. JOHN J. MOY, Plaintiff and Appellant, v. HOWARD VASCHE et al., Defendants and Respondents.

James A. Walker and Jan Alton Walker for Plaintiff and Appellant.

Pioda, Leach, Stave, Bryan & Ames, Burt L. Talcott and Robert H. Ames for Defendants and Respondents.

DEVINE, J.—This is an appeal from an order admitting, on offer of respondents, a one-page document to probate as a codicil to a three-page document which was offered by appellant and which, too, was admitted to probate.

Appellant, John Moy, was the husband of Henrietta Vasche Moy, who died on September 28, 1960. She was 52 years old when she died, and had been married about eight years to John Moy. Although decedent had an interest in two parcels of property, the home in which she and her husband lived at 215 Pine Street, Salinas, and a farm near Merced, the former was held in joint tenancy with her brother, respondent Howard Vasche. In the Merced property Mrs. Moy had a one-half interest, but not in joint tenancy. Evidence of the income from the Merced farm is meager, but is sufficient to indicate that if all the buildings were rented, income would be about $2,880 a year.

The two documents which are the subject of this lawsuit are holographs, each bearing the date May 14, 1959. The trial judge understandably expressed his awareness of the extraordinary difficulty in determining which of the documents was executed later, but resolved the problem upon reasoning set forth in an opinion, as appears below.

There were two sources of evidence as to which of the two testamentary papers was executed later, namely, testimony of the husband as to the manner of their execution, and internal evidence from the documents themselves.

### Testimony of Appellant

John Moy testified that on a date which he fixes as May 14, 1959, chiefly because the two documents bear that date but partly because he and his wife had been talking about taking a trip before Decoration Day, at about 8 o'clock in the evening, the testatrix sat down in front of a dresser at the foot of the bed and began writing. She was "back kind of sideway" about seven feet from her husband, who had gone to bed. The appellant was not wearing his glasses, which he needed for reading. After approximately a half hour of writing, Henrietta Moy said, "I'm going to have to write this over again"; she took the sheet, turned it over and laid it to one side. She used three pages in the second writing, which took about an hour to complete. After she finished writing, she picked up the three-page document, read it over and "said if anything happens now you are taken care of. I don't remember the exact wording but to that effect." This is the

only testimony directly on the subject of execution of the wills.

In two matters of testimony of Mr. Moy, however, there was conflict with testimony of other witnesses. The first is this: Mr. Moy testified that he first learned about the wills when he was in the home of respondent Vasche, the brother of decedent, some three weeks after the death, and that he, Mr. Moy, had not joined Mr. Vasche in looking for a will in Mr. Moy's home. Vasche testified that all three were looking for a will in the Moy home on the day following the death, that Vasche found the wills in a drawer, called Mrs. Vasche and Moy, and told them what he had found.

The other conflict is: Mr. Moy testified that the two wills were not discussed at all with Mr. Bryan, an attorney, in his office; but Mr. Bryan testified that he asked Moy and Vasche, both present in his office, "which of the wills was written last," and that "both replied by either a shrug of the shoulders, indicating they didn't know how or said something, I can't remember which" and "my best recollection is that John Moy shrugged his shoulders and Howard Vasche said, 'I don't know,' or words to that effect."

Although the testimony of Mr. Moy as to the execution of the wills was not, and in the nature of things could not be, directly contradicted, the trial judge was not obliged to accept his testimony, considering the conflicts with testimony of other witnesses, the fact that the writing was over 16 months removed from the date of death, and, of course, was still farther removed from the date of trial. The fact that Mr. Moy had not answered as to the sequence of the wills when asked by Mr. Bryan, could have been considered. Also, had Mrs. Moy been dissatisfied with the one-page will, and because of this said she would have to write it over again, it would seem unlikely that she would sign the first writing, or that having signed it, she would not destroy it. Altogether, the judge was free to reject the husband's testimony, not necessarily because he thought it was prevaricated, but, perhaps, that it was not founded on reliable memory, and to find it to be untrue that the three-page will was the later in time. The rejection of the testimony disposes, too, of appellant's claim that decedent orally revoked the one-page document, and makes unnecessary discussion about the legal requirements for revocation.

## The Documents

The court's declining to accept appellant's testimony had

the effect of leaving the three-page will unsupported by external evidence, but it did not have the effect of establishing the contradictory proposition that the one-page will was the later. (*Estate of Bould,* 135 Cal.App.2d 260, 264 [287 P.2d 8, 289 P.2d 15].) It is necessary now to look to the testamentary documents, which are set forth in columnar form.*

*Three-Page Writing*

1. "I Henrietta Wilhelmana Vasche Moy do hereby say that this is my wish to do and to take care of John J. Moy."

2. "Any thing of this house and of what may were be coming from Route 2 Box 710 Merced. That ½ of ~~incom and a~~ that income of which I am a one half owner is to go to my husband John James Moy and is to be not taken to be used ~~into~~ in any interest of my brother."

3. "I am in my reasonable senses I ~~w~~ will not not accept my brother's wife Violet Faith Ditrich Brown Vasche as to any consideration of this propert what so ever."

4. "I wish to state that this this property 215 Pine St. Salinas, Calif. all real property do go to my husband. My own ~~hafl~~ half of this prop-

*One-Page Writing*

3. "and to my husband as long as he shall live any income from this property at 215 Pine St Salinas Calif and Route 2 Box 710 Merced is to go to my husband John James Moy for the length of his life and for all expense of his funeral"

2. "not a thing to my sister in law, Violet Faith Ditrich Brown Vasche . . . not ~~expend not~~ his wife Violet Faith Ditrich Brown Vasche ~~Sh~~ She in turn Violet Faith Ditrich Brown Vasche will have nothing to do with any piece of property and ~~resitr~~ nothing within that property, nothing in this house."

1. "That I Henrietta Vasche owner Moy and as ~~ewher~~ of 215 Pine St. Salinas Calif and Route 2 Box 710 Merced Calif do say

---

*We have supplied the numbering and breaking into paragraphs in order to allow ready comparison. The material of the three-page will is set forth in the original sequence. The sequence of the material of the one-page will is indicated by the numbering and paragraphs.

erty go to my husband, John James Moy.''

5. ''I wish alls also to ta state Violet Faith Ditrich Vasche Brown Vasche or her family including Georgia, Paul or David Vasche. They are not gonge going to have one penny of these places. They have nothing whatsoever to getting any thing from this property 215 Pine St. Salinas, Calif or Route 2 Box 710 Merced.''
6. '' (Howard—I dont want to to do but it was our Mothers wish—Im sorry.''

and declair that my half interest in this house and Merced property slall go to my brother''
4. ''and from then on the property what ever may be left will go to my brother's children Georgia, Paul and David''

The trial judge reasoned that the one-page will was the later, stating in his opinion: ''Reading the two wills together suggests that after she had drafted the three-page document, signed it rather unwillingly, then made the statement at the bottom of the third page, she recanted and wrote the one-page document as a codicil. In each case it clearly appears to be her intention that income from the Merced property should go to John James Moy, her surviving husband. In the three-page will she failed to dispose of the remainder following the life estate to her husband; but she did state that Georgia, Paul and David Vasche should receive nothing. If we consider the one-page document as a codicil to the three-page, we may reconcile its execution by the fact that she changed her mind and decided that after taking care of her husband for life, the remainder interest in the Merced property should go to Georgia, Paul and David. Of course, she shifted the remainder in the Pine Street property from her husband to her brother but this is of no concern since it was held in joint tenancy.''

The Pine Street house, held in joint tenancy with decedent's brother, was not subject to testamentary disposition. Thus, the purported legacy of income from this property as contained in paragraph two of the three-page writing and in paragraph three of the one-page writing is ineffective,

as is the purported devise of an interest in the property itself in paragraph four of the three-page writing, and likewise the purported devise to the brother in paragraph one of the one-page document, because the brother had obtained his interest when the joint tenancy was created, and did not acquire it by the will. (*Estate of Moore,* 165 Cal.App.2d 455, 460 [322 P.2d 108].)

The only property, therefore, which was disposed of by the will is the Merced farm. In both documents, the testratrix gave the income of this farm to her husband (paragraph two of the three-page writing, paragraph three of the one-page writing). The sole property interest, then, which can be in dispute is the Merced property, as distinguished from its income. ■ We have in mind the rule that the function of the trial court, and of this court in reviewing the trial court's action, in respect of the admission of any document as a will or a codicil, is not to determine questions of construction of the documents as to opposing claims to distribution except for the determination of the precise issue of what document or documents constituted the last will of the deceased. (*Estate of Salmonski,* 38 Cal.2d 199, 208 [238 P.2d 966].) ■ Thus, although the one-page will gives decedent's one-half interest in the Merced property "to my brother" in paragraph one, and gives it to "my brother's children" in paragraph four, it is not to be decided at this time what distribution shall be made, should there be an issue between the brother and his children, because that decision is not necessary to the present purpose (and, although the trial judge's opinion refers to the remainder as going to Georgia, Paul and David, the brother's children, the judge properly omitted from the order any determination on this point).

The court did regard it necessary or proper, in deciding which will was the later, to look to the point whether the remainder was made the subject of testamentary disposition. In the three-page will, there is no attempt to dispose nor disposition of the property itself except the words: "I wish to state that this this property 215 Pine St. Salinas, Calif. all real property do go to my husband. My own ~~hafl~~ half of this property go to my husband, John James Moy." This, it is apparent from the judge's opinion and order, was construed by him as relating to the Salinas property only, which it could not affect because of the joint tenancy, and this construction was reasonable because (1) it is obvious from the context that throughout the paragraph, testatrix was referring to this prop-

erty only; and (2) there would have been no need for specifying that the income of testatrix' one-half interest in the Merced property was to go to the husband if the fee were devised to him.

In the three-page will, thus construed, the remainder is not devised. That the decision was reasonable that the testatrix regretted her eliminating her brother's children, and then decided to devise the remainder to them (and, perhaps, to her brother, too, as observed above) appears both (1) from testatrix' expression of regret at the end of the three-page writing, and (2) from the construction supplied by the law which favors complete over partial testacy. (*Estate of Carroll,* 138 Cal.App.2d 363, 369 [291 P.2d 976]; *Estate of Wierzbicky,* 69 Cal.App.2d 690, 692-693 [159 P.2d 699].) ▮ Although in the cases just cited, the rule favoring complete testacy was applied where but one will was involved, we see no reason why it should not be used to assist the court in determining which of two documents is the later in time and therefore gives expression to the final testamentary disposition.

The construction placed by the trial court upon the two documents for the purpose of deciding which was the later was not the only possible one, but appears to us to be the more reasonable.

Order affirmed.

Draper, P. J., and Salsman, J., concurred.

A petition for a rehearing was denied June 27, 1963, and appellant's petition for a hearing by the Supreme Court was denied July 31, 1963.