[Civ. No. 28290. Second Dist., Div. One. Dec. 7, 1965.]

Estate of ISABELLE LIPOVSKY, Deceased. EILEEN DREGER, Petitioner and Respondent, v. AMERICAN HEART ASSOCIATION, INC., Objector and Appellant.

William M. Poindexter and Alfred B. Doutré for Objector and Appellant.

Schramm, Raddue & Seed, Edward W. Schramm and Kurt H. Pyle for Petitioner and Respondent.

LILLIE, J.—Eileen Dreger, claiming to be the daughter of the deceased, Isabelle Lipovsky, instituted heirship proceedings to adjudicate her claim as a pretermitted heir under section 90, Probate Code. Appellant herein, American Heart Association, Inc., residuary legatee under the will, opposed the motion. The trial court found that Eileen is the daughter of decedent; that decedent had one other child, a son, Gareth Desmond Winton; that the omission to provide for Eileen in the will was unintentional; and that Eileen is entitled to distribution of one-half of the estate. Decree was entered accordingly; American Heart Association, Inc., appeals therefrom.

In her will executed March 29, 1963, and filed for probate on May 16, 1963, Isabelle Lipovsky, also known as Eliza Milne Lipovsky, mentioned various individual legatees; she named as residuary legatee the American Heart Association, Inc. She did not mention her daughter, Eileen Dreger, by name but declared in paragraph ''FIFTH: Except as otherwise provided in this Will, I have intentionally and with full knowledge omitted to provide for my heirs, including my son, GARETH DESMOND WINTON.'' (Notice of hearing of petition to determine heirship was mailed to Winton at Okalla Prison, New Westminster, B.C.; while he was released prior to receipt thereof, he is in no manner involved in these proceedings.)

Eileen, a resident of Vancouver, B.C., was not present and did not testify at the hearing. Received in evidence (Exh. 2-A) was a certified photostatic copy of Particulars of Birth showing that on February 1, 1920, in Vancouver, British Columbia, one Eileen Eliza Winton was born to Alexander Winton and Eliza Milne (Name and maiden surname of mother), both born in Scotland. Exhibit 2-B, certified photostatic copy of Registration of Marriage, shows that on June 24, 1944, Herman Dreger married one Eileen Eliza Winton, age 24, born in Vancouver, B.C., Canada, to Alexander Winton and Eliza Milne (maiden name of mother), both born in Scotland. Exhibit 3 is Certificate of Death showing that Isabelle Lipovsky, a widow, died May 7, 1963, in Santa Barbara; that she was born in Scotland on October 2, 1901, to William Milne and Eliza Duncan, both born in Scotland; and that she was a citizen of Canada. While Affidavit of Eileen Eliza Dreger was marked Exhibit 2 for identification, it was not received in evidence.

Over objection of appellant, the following evidence was received to show decedent's lack of intent to omit Eileen

from her will—that at the time she executed the will the testatrix was laboring under a repression and not conscious of her daughter's existence. ▮ Peter J. Samuelson, attorney at law, had known decedent since March 20, 1962, and saw her fairly regularly, representing her in minor matters; during the first three months she told him she wanted to make a will but was not certain of her dispositions, she spoke of doing something for her son, but thereafter never mentioned him again "in that context"; she "frequently," four to six times, indicated "she had been greatly disappointed, been greatly disappointed by her family, . . ." Finally, she asked Samuelson to draft a will; he had several conversations with her concerning her family—he asked if she had any children; "She indicated that she had had this son, and initially, she was very reticent to identify him other—by name, other than just 'my son.' . . . But she did tell me in response to a rather vigorous questioning who he was by name, and that she reiterated that she wanted him to receive nothing under the Will"; he had to pry the information from her; he asked her if she had children other than the son; "She never indicated she had any other children"; he questioned her again "vigorously" about the matter; "She is very equivocal. I might say in explanation, she—she would be reticent to the point of not even speaking in response to the question, perhaps for a minute or two, and then stated that her family had disappointed her. And I asked her again about her children, other than the son. And she said, 'No,' with sort of finality that that is all, and that is the way she wished her property to be disposed of on her death." She was not equivocal on other matters.

▮ Further, Dr. Lambert, a psychiatrist, who had never known or seen Isabelle Lipovsky and whose opinion relative to the deceased was based purely on a set of hypothetical circumstances, testified that "it would be medically probable" that at the time she made her will she was repressing, the effect of which was to strike or eliminate from her consciousness the fact that she had a daughter. He explained that repression is an act of the mind by which it covers up memories or knowledge, and successful repression is a frequent event of the human mind in a parent, disappointed in the conduct or success or relationship of a child, to eliminate the memory of that child. However, Dr. Lambert admitted that he couldn't tell whether there had been an actual complete forgetting of the very existence of the daughter, or

608

whether Mrs. Lipovsky just refused to talk about the daughter, for he "could deal only in probabilities."

 While there is much left to be desired by way of proof of petitioner's relationship to decedent, an analysis of the various exhibits in evidence and all favorable inferences based thereon and presumptions flowing from identity of name, support the finding that she is decedent's daughter. Identity of person is presumed from identity of name and the burden was on appellant to rebut the presumption, which it failed to do. (*Estate of Williams,* 128 Cal. 552, 554-555 [61 P. 670, 79 Am.St.Rep. 67]; *Estate of Woolsey,* 128 Cal.App. 391, 395-396 [17 P.2d 767]; *People* v. *Carava,* 2 Cal.App.2d 696, 697 [38 P.2d 824]; *McKinley Bros.* v. *McCauley,* 215 Cal. 229, 234 [9 P.2d 298].) Appellant offered no evidence at the hearing.

The main issue raises two questions: was the extrinsic evidence to show decedent's lack of intent to omit her daughter from the will properly received by the court below, and if so, is it sufficient to support the finding that the omission was unintentional?

Petitioner was not mentioned by name in the will; however, the testatrix therein declared: "FIFTH: Except as otherwise provided in this Will, I have intentionally and with full knowledge omitted to provide for my heirs, including my son, GARETH DESMOND WINTON." Under section 90, Probate Code, when a testator omits to provide in his will for any of his children and such child is unprovided for by any settlement, and has not had an equal proportion of the testator's property bestowed on him by way of advancement, "unless it appears from the will that such omission was intentional, such child . . . succeeds to the same share in the estate of the testator as if he had died intestate."

 This statute was not intended as a limitation on the power of one to dispose of his property by will as he sees fit; its purpose is solely "to guard against the unintentional omission of lineal descendants from a share in the decedent's estate, e.g., 'by reason of oversight, accident, mistake or unexpected change of condition.' (*Estate of Torregano,* 54 Cal. 2d 234, 248 [5 Cal.Rptr. 137, 352 P.2d 505].)" (*Estate of McClure,* 214 Cal.App.2d 590, 592-593 [29 Cal.Rptr. 569]; *Estate of Callaghan,* 119 Cal. 571, 574-575 [51 P. 860, 39 L.R.A. 689]; *Payne* v. *Payne,* 18 Cal. 291, 302.) A testator may disinherit any or all of his children if he so desires, but to avoid the operation of the pretermission stat-

ute, his intention to omit provision for a child must appear on the face of the will, and then it must appear from words which indicate such intent directly, or by implication equally as strong (*In re Stevens,* 83 Cal. 322, 329-330 [23 P. 379, 17 Am.St.Rep. 252]; *Estate of Hassell,* 168 Cal. 287, 288 [142 P. 838]; *Estate of Labrie,* 130 Cal.App.2d 235, 237 [278 P.2d 760]; *Estate of Carroll,* 138 Cal.App.2d 363, 366 [291 P.2d 976]); and "Before a testator may be said to have intentionally omitted his child, it must appear on the face of the will that he had such child in mind at the time of executing the will, and having the child in mind he omitted to provide [citations]. . . ." (*Estate of Torregano,* 54 Cal.2d 234, 249-250 [5 Cal.Rptr. 137, 352 P.2d 505]; *Estate of McClure,* 214 Cal.App.2d 590, 593 [29 Cal.Rptr. 569].) ▮ "On the other hand, the fact that a testator had in mind a particular person for whom he made no provision in his will need not be made to appear from language designating that person by name. (*Van Strien* v. *Jones,* 46 Cal.2d 705, 707 [299 P.2d 1]; *Estate of Kurtz,* 190 Cal. 146, 149 [210 P. 459].) The use of language designating a class of which that person is a member may suffice to establish such fact, if the designation used refers to those who might otherwise be pretermitted. (*Van Strien* v. *Jones, supra,* 46 Cal.2d 705, 707; *Estate of Lindsay,* 176 Cal. 238, 239 [168 P. 113]; *Estate of Hassell,* 168 Cal. 287, 288 [142 P. 838].)'' (*Estate of McClure,* 214 Cal.App. 2d 590, 593 [29 Cal.Rptr. 569].) Thus, it long has been held that a testator's declaration in his will that he has intentionally omitted to provide for his "heirs" is a sufficient expression of his intent to exclude a child. (*Estate of Hassell,* 168 Cal. 287, 288 [142 P. 839]; *Estate of Lindsay,* 176 Cal. 238, 239 [168 P. 113]; *Estate of Lombard,* 16 Cal.App. 2d 526, 528 [60 P.2d 1000].)

The testamentary declaration that the testator has "intentionally and with full knowledge omitted to provide for my heirs" is that ordinarily used by one when he has in mind persons who are his children and for whom he wishes to make no provision. (*Estate of Lombard,* 16 Cal.2d 526, 528 [60 P.2d 1000].) The general class "heirs," "always includes the children of the decedent." (*Estate of Hassell,* 168 Cal. 287, 288 [142 P. 839].) ▮ ". . . [I]t is settled that the term 'heirs' precisely 'describes children and the issue of deceased children, and if the language of the will discloses an intention not to provide for "heirs" other than the desig-

nated devisees and legatees, the necessary conclusion is that the claimant was disinherited by design and not because the testator was oblivious of his existence. That the testator had the claimant in mind and intentionally failed to provide for him is held to be evidenced by language which refers to the exclusion of "heirs" or "relatives". . . .' (26 Cal.Jur. 926, § 239, citing *Estate of Hassell*, 168 Cal. 287 [142 P. 838]; *Estate of Lindsay*, 176 Cal. 238, 240 [168 P. 113]; *Estate of Minear*, 180 Cal. 239 [180 P. 535]; *Estate of Trickett*, 197 Cal. 20 [239 P. 406]; *Estate of Lombard*, 16 Cal.App.2d 526 [60 P.2d 1000].)" (*Estate of Cochems*, 112 Cal.App.2d 634, 637 [247 P.2d 131].) In *Estate of Doell*, 113 Cal.App.2d 37 [247 P.2d 580], the court said concerning the provision, " 'I have intentionally . . . omitted to provide for my heirs and the heirs of my predeceased husband,' " "The testatrix has simply and clearly designated two different classes of persons and has provided that neither class shall take under the will." (P. 38.) Relying on the above cases, the court in *Estate of McClure*, 214 Cal.App.2d 590 [29 Cal.Rptr. 569], held that a no-contest provision bequeathing a nominal amount to any person claiming to be an "heir" of the testator "refers to a child of the testator not otherwise provided for therein, and satisfies the requirements of section 90 of the Probate Code that it appear therefrom that he had such child in mind at the time of executing his will, and intentionally omitted making any provision therefor." (*Estate of McClure*, 214 Cal.App.2d 590, 593-594 [29 Cal.Rptr. 569].)

 In the light of the foregoing rules, we conclude that as a matter of law the language found in paragraph FIFTH of the will clearly indicates an intention on the part of the testatrix to omit provision for her daughter and a design to disinherit her.

Respondent's argument, that the last clause of paragraph FIFTH—"including my son, GARETH DESMOND WINTON" —creates an ambiguity clouding the expression of intent to omit her permitting extrinsic evidence to show decedent's lack of intent to do so, is an "attempt to build up a conflict which in fact does not exist." (*J. Breuner Co.* v. *Western Union Tel. Co.*, 108 Cal.App. 243, 253 [291 P. 445].) The last clause of the paragraph creates no conflict with or repugnancy to the first, and the two are entirely consistent. Clearly, the words, "including my son," taken in their ordinary and grammatical sense (Prob. Code, § 106) were intended as words of clarification not restriction. The fact

that petitioner was not mentioned by name in the clause of disinheritance does not dictate the conclusion that the testatrix did not have her in mind when she intentionally and with full knowledge omitted to provide for her ''heirs.'' Actually, under the circumstances it appears that petitioner was the only person not specifically named in the will who could claim to be an heir and establish such fact. (See *Estate of McClure,* 214 Cal.App.2d 590, 596 [29 Cal.Rptr. 569].)

Respondent relies entirely on *Estate of Torregano,* 54 Cal. 2d 234 [5 Cal.Rptr. 137, 352 P.2d 505], for the proposition ''that extrinsic evidence is admissible to prove a testator's *lack* of intent to omit from his will any provision for a presumptive heir.'' (P. 243.) However, the controversial provisions of the respective wills—in that case and the instant one—differ to such a degree that *Torregano* does not substantially aid her. (See *Estate of McClure,* 214 Cal.App.2d 590, 595-596 [29 Cal.Rptr. 569].) Therein the testator not only omitted mention of his daughter by name, and declared in his will ''. . . I have no children . . .'' (Second), but failed to disinherit anyone, even a class of persons to which the daughter might have belonged. The testator provided in ''a typical clause intended to prevent a contest'' (p. 252) : '' 'I give . . . to any person or persons who may contest this my Last Will and Testament, or assert any claim to share my estate by virtue of relationship or otherwise the sum of One Dollar ($1.00) each in settlement of their said claim or claims.' '' (Thirteenth.) (P. 239.) Unlike the instant will, the *Torregano* will contained no direct or indirect language of disinheritance, and the court in that case so stated (p. 253), citing *Estate of Carroll,* 138 Cal.App.2d 363, 366 [291 P.2d 976] : '' 'We have been unable to find, nor have we been cited to, any case holding that the mere bequest of a nominal sum constitutes an intent to disinherit. . . .' '' Concerning the Thirteenth clause of the *Torregano* will, the court said : ''Under the construction of the will in this opinion the clause is given full effect as a no contest clause. Such a clause differs radically from a clause of disinheritance. The true disinheritance clause often fails to name a specific presumptive heir, and yet may be interpreted to exclude the same because of the use of words expressly indicating an intent to disinherit.'' (P. 252.)

While in the *Torregano* will there was a denial that the testator had any children and an omission to provide for his daughter, there was therein neither direct nor indirect lan-

guage of disinheritance and a complete absence of any intent to disinherit her; the no-contest clause therein expressed no intent to disinherit, and the class of persons mentioned in the no-contest clause was too general as a matter of law to include his daughter. Thus, extrinsic evidence was admissible to show that the daughter was a pretermitted heir. In the instant will there is no denial by Mrs. Lipovsky that she has a daughter, the FIFTH paragraph is clearly a clause of disinheritance, and by the use therein of the classification "heirs," she intentionally and with full knowledge specifically omitted to provide for her daughter (who falls within such classification), as surely as though she had mentioned her by name, as she had her son, Gareth. (See *Estate of Torregano, supra,* pp. 253-254.) The will clearly and affirmatively manifests her intention to disinherit her "heirs"; she intended to and did, in fact, thereby provide that her daughter take nothing of her estate. Such a clear and unambiguous expression of the intention of the testatrix should prevail.

In the light of our holding, extended comment on the evidence is unnecessary. ▮ ▮ However, contrary to the view of the trial judge, the testimony of Peter Samuelson does not "*conclusively*" show that decedent said she had no children other than her son; and the evidence is not at all clear that she "*must*" have been laboring under a repression. (See p. 2, memorandum of opinion determining heirship.)

The judgment is reversed.

Wood, P. J., and Fourt, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 2, 1966.