[Civ. No. 35844. Second Dist., Div. Two. July 20, 1970.]

Estate of LILA BIBB ROBERTS, Deceased.
PACIFIC-SECURITY BANK, as Executor, etc.,
Petitioner and Respondent, v.
TURNER F. ROBERTS et al., Claimants and Appellants;
DAVID BRADLEY ROBERTS et al., Claimants and Respondents.

**COUNSEL**

Taylor & Barker and Robert C. Summers for Claimants and Appellants.

Philip H. Harris for Claimants and Respondents.
William P. Camusi for Petitioner and Respondent.

**OPINION**

**ROTH, P. J.**—Appellants Turner F. Roberts (Turner) and Lila Helen Roberts Walsh (Lila Helen) grandchildren of Lila Bibb Roberts, deceased, appeal from an order predicated upon a petition of Pacific-Security Bank, executor, to determine heirship.

There is no dispute about the facts.

On March 20, 1953, Lila Bibb Roberts deceased (testatrix) executed her last will. In pertinent part the will provided:

Paragraph FIRST recites that testatrix was a widow; that she had a deceased son, Archie Roberts who was the father of appellants Turner and Lila Helen and a living son Watkins Roberts, father of Gerald Roberts (Gerald), Richard Roberts (Richard) and David Roberts (David).

Paragraph SECOND declared "It is my intention hereby to dispose of all property, real, personal or mixed, and wheresoever situated, which I have a right to dispose by WILL . . . ."

Dispositions were made:

To Turner: $10,000 and her Pecan Valley Farm in Texas.

To Lila Helen: $10,000 and a parcel of unimproved property in Texas.

To Gerald: $10,000 and a subdivision lot in Texas.

To David: $5,000.

To Richard: $1.

To Watkins' wife Lillian: $5,000.

Paragraph TENTH disposed of the residue as follows: "I give, devise and bequeath unto my son, WATKINS BRADLEY ROBERTS, all the rest and residue of the property of which I may die possessed, whether real, personal or mixed and wheresoever situated."

Paragraph ELEVENTH stated her intention not to provide for any other possible heirs living at the time of her death. Paragraph TWELFTH was a "no contest clause" providing that any contestant should receive "the sum of ONE DOLLAR ($1.00) ONLY."

On December 28, 1959, approximately six years and nine months after the will was executed, testatrix was judicially declared incompetent. She died on October 14, 1968. There was no restoration to competency prior to her death.

Watkins, the residuary legatee, died on April 22, 1964, approximately four years before the death of decedent. Decedent did not know of Watkins' death at any time prior to her own. The five grandchildren listed above survived.

Security-Pacific Bank, as executor, petitioned the court for an order of distribution based on the antilapse statute, probate section 92,[1] asserting

[1]Probate Code section 92 reads in relevant part, as follows: "If a devisee or legatee dies during the lifetime of the testator, the testamentary disposition to him fails, unless an intention appears to substitute another in his place; except that when any estate is devised or bequeathed to any kindred of the testator, and the devisee or legatee

that section 92 required distribution of the lapsed Watkins bequest to the lineal heirs of Watkins, to wit: his children Gerald, Richard and David.

Appellants, the children of Archie, basically contend: (1) the antilapse statute should not be applied when, because of changed circumstances (such as those at bench) the testatrix could not have validly changed her will; (2) the antilapse statute should not be applied because deceased had in her will indicated a contrary intent, and (3) the antilapse statute is part of a general legislative scheme to avoid pretermission and should not be applied where it would result in a disposition contrary to the general testamentary scheme.

■ " 'The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible.' (*Estate of Wilson* (1920) 184 Cal. 63, 66-67 [citation].)" (*Estate of Russell,* 69 Cal.2d 200, 205 [70 Cal.Rptr. 561, 444 P.2d 353]; *Estate of Barnes,* 63 Cal.2d 580, 583 [47 Cal.Rptr. 480, 407 P.2d 656].) ■ The will should also be construed to avoid intestacy (Prob. Code, § 102; *Estate of Barnes, supra,* at p. 583; *Estate of Carroll,* 138 Cal.App.2d 363, 369 [291 P.2d 976]; *Estate of Moore,* 135 Cal.App.2d 122, 130 [286 P.2d 939].) Appellants, in support of their stated position, rely primarily upon dicta in numerous California cases which state that after the death of a legatee or devisee, a testator presumably may change his will if the effect of such death results in an undesired disposition. (See *Estate of Barnes, supra,* at p. 583; *Estate of Friedman,* 198 Cal.App.2d 434, 441 [18 Cal.Rptr. 252]; *Estate of Maxwell,* 158 Cal.App.2d 544, 550 [322 P.2d 1018].)

On the facts at bench, the precise question presented appears to be one of first impression in this state, but case law involving section 92 disposes of the issue contrary to appellants' position. ■ It is settled that testator is presumed to know the law at the time of the making of the will. (*Estate of Carroll, supra,* at p. 365; *Estate of Steidl,* 89 Cal.App.2d 488, 490 [201 P.2d 58].) California precedents require a testator to look forward. ■ There is no assumption that he will later look backward to consider the law in its application to facts as they existed at the time the will was executed. Section 92, therefore, must be read into the will unless a clear expression to the contrary appears. (*Estate of Pfadenhauer,* 159 Cal.App.2d 686, 688 [324 P.2d 693]; *Estate of Carroll, supra,* at p. 365; *Estate of*

dies before the testator, leaving lineal descendants . . . such descendants take the estate so given by the will in the same manner as the devisee or legatee would have done had he survived the testator."

*Steidl, supra,* at pp. 489-490.) ■ Many other events other than testamentary incapacity may preclude a review of a will after the death of a legatee; for example, lack of knowledge of the death of a legatee; inability because of other illness or nonadjudicated mental incapacity, or the testator may simply have forgotten the terms of the will. ■ Further, the rule that a testator looks forward and has in mind the law as it existed at the time a will is executed fits the facts of the case at bench. Testatrix, adopting a customary clause in paragraph SECOND: "It is my intention hereby to dispose of all property, real, personal or mixed, and wheresoever situated, which I have a right to dispose of by WILL . . .;" recognized the possibility that her son Watkins might predecease her and provided in paragraph THIRTEENTH for an alternate executor, "In the event that he predeceases me . . ."

Thus, at bench the law and the facts combine to effectuate the intention of the testatrix which is the paramount rule in the construction of wills. The incapacity of testatrix prior to her death and the death of Watkins prior to the death of testatrix are not sufficient to defeat the application of section 92 of the Probate Code.

Appellants next urge that application of section 92 would defeat Lila's intent because it would lead to an equal division of the residue among Watkins' three sons which she could not have intended since she left to one of them, Richard, "the sum of ONE DOLLAR ($1.00) ONLY." This, appellants argue, showed a clear intent to totally disinherit Richard.

■ "To render the statute inoperative a contrary intent on the part of the testator must be plainly indicated." (*Estate of Steidl, supra,* at p. 490; *Estate of Pfadenhauer, supra,* at p. 688; *Estate of Carroll, supra,* at p. 365.) In *Estate of Carroll, supra,* the testatrix left her estate to her sister and $1.00 to each nephew. There, the court stated at page 366: "We do not believe that a bequest of a nominal sum, although in effect it is a disinheritance under the conditions set forth in the will, namely, the ability of the chief legatee to take, is evidence of an intention of the testatrix that in the event the chief legatee cannot take, the one given the nominal sum is to be disinherited. In other words, the disinheritance by the mere bequest of a nominal sum is not a complete disinheritance under all circumstances."

Appellants rely on the fact that the bequest to Richard states: "ONE DOLLAR ($1.00) ONLY," and urge that the word ONLY distinguishes the case from *Carroll.* They rely on *Estate of Smith,* 58 Cal.App.2d 352 [136 P.2d 366], in which the lineal descendant of a deceased legatee was given $5.00; but in that case, the testatrix had added a codicil providing that the lineal descendants ". . . shall not receive anything from my estate or belongings or share in my estate in any way shape or form, other than five

dollars ($5.00) . . ." ■ The addition of the "Only" does not bring the disinheritance clause into the category of provisions which will defeat application of the antilapse clause by showing a contrary intent "with a reasonable degree of certainty." (*Estate of Carroll, supra,* at p. 365.)

The will does not, nor does the record show the ages of any of the grandchildren or suggest the remotest reason for the $1.00 bequest to Richard. It is equally probable that Richard may have been the one grandchild who in the opinion of the testatrix, was least capable of handling money and that testatrix made a nominal bequest to Richard secure in the belief that her son, Watkins, father of Richard, would husband Richard's share during his lifetime, and thus sought only to postpone vesting Richard's share until after his father's death.

As noted above, testatrix was aware that Watkins might predecease her. She would also know that his children would be natural objects of his bounty. If she intended Richard to have no part of her estate in the event of Watkins' death prior to hers, she could have made specific provisions in her will as was done by codicil in *Estate of Smith, supra,* thereby avoiding the operation of section 92 in respect of Richard's share.

Appellants finally urge that because the intent of Probate Code, sections 90 and 92 is to protect against inadvertent omission of lineal descendants, there is no more reason to apply one than to apply the other and because all of the grandchildren may be considered "pretermitted" as to the residue, the more favorable result would be to apply section 90 which would allow all to share equally. The Legislature has not so provided. ■ Since all five grandchildren are mentioned in the will, none is pretermitted according to the terms of section 90. Under section 92, the children of Watkins are statute-made heirs. (*Estate of Pierce,* 32 Cal.2d 265 [196 P.2d 1]; *Larrabee v. Tracy,* 21 Cal.2d 645, 649 [134 P.2d 265]; *Estate of Pfadenhauer, supra,* at p. 688; *Estate of Tibbetts,* 48 Cal.App.2d 177, 179 [119 P.2d 368].) They are entitled to take under the provisions of that statute.

The order of distribution is affirmed.

Herndon, J., and Fleming, J., concurred.